**Joe K. DEVITA, Plaintiff-Appellee,**

**v.**

**BURLINGTON NORTHERN, INC., successor in interest by merger to Great Northern Railway Company, Defendant-Appellant.**

**No. 72-1776.**

United States Court of Appeals, Ninth Circuit.

March 11, 1974.

As Amended on Denial of Rehearing May 8, 1974.

Lawrence D. Silvernale, (argued), Seattle, Wash., Hugh A. Dressel, Spokane, Wash., for defendant-appellant.

William J. Powell, Spokane, Wash., for plaintiff-appellee.

Before CHAMBERS and SNEED, Circuit Judges, and BURNS,* District Judge.

PER CURIAM:

The judgment of the district court setting aside the determinations of the National Railroad Adjustment Board, First Division, is reversed.

Devita, a locomotive engineer, was discharged for alleged insubordination and inducing insubordination.

At issue is whether Devita took an appeal in time from the company superintendent to a higher official, the general manager.[1] Devita says he did not get timely notice of the superintendent's decision, so he could not take a timely appeal. The railroad says the notice was promptly mailed, and its general manager and its vice president so ruled.[2]

When the case reached the Railroad Adjustment Board, it ruled that the notice was timely. The implication of the rulings are that Devita must have received the notice promptly.[3]

If the question were properly before the courts and we had heard and seen the witnesses, we might have found the facts just as the district court did, i. e., no notice. But the right of courts to review the work of the Railroad Adjustment Board is very, very limited. See Brotherhood of R.R. Trainmen v. Chicago River & Indiana R.R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957).

---

* The Honorable James M. Burns, United States District Judge for the District of Oregon, sitting by designation.

1. In the intra-company process there were three steps: review by the superintendent who had notified Devita of his discharge; review by a general manager; and finally a review by a vice president. After the third step, the case went to the Board.

2. Devita was notified of his discharge on January 7, 1965. The superintendent's notice of denial was dated February 18, 1965. On June 22, 1965, the general manager denied the claim on the basis of the 60-day limitation for appeal from the superintendent in the collective bargaining agreement. The general manager did not review the merits. On August 12, 1965, the vice president denied the claim again on the ground used by the general manager.

On January 24, 1969, Devita filed his petition for a review with the National Railroad Adjustment Board. We do not understand the delay from 1965 to 1969, but the only time issue made anywhere as the case was en route is the delay on the appeal from the superintendent on the ruling of February 18, 1965.

3. Appellee's brief makes an alternative contention that his union had a parallel appeal lodged with the railroad going for him and that the union submitted a timely notice of rejection of the superintendent's disallowance of Devita's claim. The union appeal, however, was quite clearly taken from the railroad's denial of a claim for back wages for a portion of the period that Devita was suspended prior to his discharge. The NRAB's implicit determination that this appeal did not preserve Devita's claim for reinstatement was thus not wholly baseless.

We are concerned with 45 U.S.C. § 153, First (m), as it read prior to 1966 and with the 1966 amendment.[4]

We conclude that this procedural issue, on facts like the ones here, is simply left forever with the Board.

The main case cited by Devita, Gunther v. San Diego & Arizona E. Ry. Co., 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965), really undercuts his position.[5]

Here in Devita's case, the trial court made a de novo determination of fact. Some God in heaven may know that it was right and the board was wrong. But Congress does not seem to have committed to us the function of reviewing factual determinations on procedural steps, especially where there was some evidence to support the Board's conclusion.

As we read the Act and its history, it seems rather clear that Congress thought that it ordinarily would be best to keep these cases within the Board and out of the courts, and that such a rule would usually be to the advantage of the aggrieved workman.[6]

Here the thing cuts the wrong way for Devita.

---

4. Prior to 1966, § 153, First (m), provided that the Board's awards "shall be final and binding upon both parties to the dispute, except insofar as they shall contain a money award." Act of June 21, 1934, ch. 691, § 3, First (m), 48 Stat. 1189. The 1966 amendment to the Act deleted that provision and added a new subsection (q) which provides that the findings and orders of the Board shall be conclusive on review, except that the order may be set aside or remanded "for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order . . . ." 45 U.S.C. § 153, First (q).

5. In Gunther, supra, the Supreme Court recognized that Congress did not favor judicial review of the Board's decisions, and accordingly, the Court refused to expand the jurisdiction of the courts, even though the exception clause of § 153, First (m), as it read prior to the 1966 amendment to the Act, might have been construed as allowing such an expansion. The current language of § 153, First (m), cannot even arguably be interpreted as allowing exceptions beyond its plain language.

6. We do not consider whether the 1966 amendments were retroactive because we conclude that the law before 1966 and after 1966 did not permit the district court's review in the area it acted.