Deba EDELMAN, Plaintiff–Appellant,

v.

WESTERN AIRLINES, INC., Defendant–Appellee.

No. 88–3856.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 1989.

Decided Dec. 27, 1989.

Jan L. Essenburg, Essenburg & Staton, Seattle, Wash., for plaintiff-appellant.

Gilmore F. Diekmann, Jr., Bronson, Bronson & McKinnon, San Francisco, Cal., for defendant-appellee.

Before WRIGHT, WALLACE and THOMPSON, Circuit Judges.

WALLACE, Circuit Judge:

Edelman timely appeals from the district court's order denying her motion for summary judgment and granting Western Airlines's (Western) cross-motion for summary judgment. The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and 1337. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

I

Edelman had worked as a flight attendant for Western for 18 years when, in 1985, she was charged with the theft of flight liquor cart proceeds. Western investigated the charges and subsequently discharged Edelman. The Association of Flight Attendants (the Union) filed a grievance pursuant to the collective bargaining agreement between the Union and Western (Agreement). Western's Seattle customer service manager conducted a hearing on this grievance the following month. The manager upheld Western's decision and denied Edelman's grievance.

The Union then appealed the grievance denial and requested the System Board of Adjustment (Board) to review the manager's decision. As required by the Agreement, the Board consisted of four members: two members of management and two Union members. Edelman was represented at the Board hearing by an attorney and a Union representative.

In his opening statement, Edelman's attorney argued that the evidence against Edelman was circumstantial, that Edelman was not in a position to dispute Western's witnesses, that her health and mental state at the time of the incidents was such that she could not remember what had happened on the flights and that, because of her long service with Western, she should be reinstated, placed on sick leave, and offered rehabilitation.

Western called five flight attendants who testified against Edelman. Four of them said they gave Edelman more money than she reported on the liquor envelopes. Each of the witnesses was cross-examined by Edelman's attorney.

Edelman testified at length concerning problems and stressful events in her personal life, and her excellent performance record as a Western flight attendant. She also testified in detail about specific incidents and conversations on each of the relevant flights. However, when questioned concerning the liquor cart proceeds given her by the other flight attendants, Edelman stated that she could not remember what had happened to the money.

Although she appeared distressed at one point during her testimony, Edelman never became hysterical or too emotional to proceed. She was able to testify clearly, understand and answer questions, and to make herself understood. At no point during the hearing did Edelman or her attorney ask the Board to continue the hearing to allow Edelman to compose herself.

At the conclusion of the hearing, the Board withdrew to discuss the case. After deliberating for about one and one-half hours, the management members took the position that Edelman had taken the money and that, if the Union members did not

agree, the Board should deadlock. The Union members then caucused, returned, and argued for a mitigated penalty. There was no further discussion about the sufficiency of the evidence. Eventually, the Union members asked if the management members would allow Edelman to resign in light of her employment record, and the company members agreed. Having reached this compromise, all four board members signed an order (the Order) which permitted Edelman to submit a letter of resignation in place of Western's termination letter.

Subsequently, Edelman filed this action in state court for wrongful discharge against Western. Western removed the case to the district court on grounds of diversity jurisdiction. Shortly thereafter, Western filed a motion for summary judgment asking the court to dismiss the case for lack of subject matter jurisdiction. Western argued that Edelman's action was preempted by the Federal Railway Labor Act, 45 U.S.C. §§ 184 and 153 First (q) (RLA). The district court denied this motion, and we subsequently denied Western's petition for a writ of mandamus and prohibition requesting us to overrule the district court's assumption of jurisdiction.

After two amendments to her complaint and a year of discovery, Edelman filed a motion for partial summary judgment. She argued that, as a matter of law, the Board's procedures and the Order violated the RLA and the Agreement. Western then filed a cross-motion for summary judgment, contending that the undisputed evidence before the court conclusively established the absence of any basis for setting aside the Board's award, and that Edelman's state law claims were preempted. The district court denied Edelman's motion for partial summary judgment and granted Western's cross-motion for summary judgment. The district court concluded that the Order and the procedures used during the hearing were sufficient under the RLA and refused to disturb the Board's decision. The district court denied Edelman's motion for reconsideration, and Edelman filed this appeal.

## II

We review the summary judgment de novo. *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir.1985). We may affirm only if the record, read in the light most favorable to Edelman, establishes that there is no genuine issue of material fact and that Western is entitled to judgment as a matter of law. *Id.*

■ Pursuant to the RLA, the scope of our review of the Order is " 'among the narrowest known to the law.' " *International Association of Machinists v. Southern Pacific Transportation Co.*, 626 F.2d 715, 717 (9th Cir.1980), *quoting Diamond v. Terminal Railway Alabama State Docks*, 421 F.2d 228, 233 (5th Cir.1970). Our review is "limited to three specific grounds: (1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption." *Union Pacific Railroad Co. v. Sheehan*, 439 U.S. 89, 93, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978) (per curiam) (*Sheehan*), *citing* 45 U.S.C. § 153 First (q). The Board's decision "may not be retried on the merits in an independent judicial proceeding." *Bernhardt v. American Airlines, Inc.*, 511 F.2d 1219, 1220 (9th Cir.1975); *Andrews v. Louisville & Nashville Railroad Co.*, 406 U.S. 320, 325, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972) (*Andrews*). "Section 153 is applicable by its terms only to decisions of the National Railroad Adjustment Board, but the same standard [of review] is applicable to [airline industry] System Board decisions under [45 U.S.C. § 184]." *Singer v. Flying Tiger Line Inc.*, 652 F.2d 1349, 1355–56 (9th Cir.1981).

In this appeal, Edelman contends that the Board's procedures and the Order violated her due process rights and the RLA, and that her state law claims are not preempted. We first address the preemption issue.

## III

In enacting the RLA, Congress sought to promote stability in labor-management re-

lations by "provid[ing] a comprehensive framework for the resolution of labor disputes in the railroad industry." *Atchison, Topeka & Santa Fe Railway Co. v. Buell,* 480 U.S. 557, 562, 107 S.Ct. 1410, 1413, 94 L.Ed.2d 563 (1987) (*Buell*). The RLA's coverage is extended to airlines as well as railroads in Title II of the RLA. 45 U.S.C. § 181. "Congress specifically intended in the RLA to keep railroad labor disputes *out of the courts.*" *Lewy v. Southern Pacific Transportation Co.,* 799 F.2d 1281, 1289 (9th Cir.1986) (*Lewy*) (emphasis in original); *see also Sheehan,* 439 U.S. at 94, 99 S.Ct. at 402. 45 U.S.C. § 151a states that "[a] purpose[ ] of the [RLA is] ... to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions."

■ Disputes which "grow[ ] out of grievances" are considered minor disputes. *Buell,* 480 U.S. at 563, 107 S.Ct. at 1414; *Gunther v. San Diego & Arizona Eastern Railway Co.,* 382 U.S. 257, 260–61, 86 S.Ct. 368, 370–71, 15 L.Ed.2d 308 (1965). "Minor disputes initially must be dealt with through a[n airline's] internal dispute resolution processes, and if not settled there, may be submitted to a division of the Adjustment Board." *Buell,* 480 U.S. at 563, 107 S.Ct. at 1414; *Crusos v. United Transportation Union, Local 1201,* 786 F.2d 970, 972 (9th Cir.), *cert. denied,* 479 U.S. 934, 107 S.Ct. 409, 93 L.Ed.2d 361 (1986); 45 U.S.C. § 153 First (i). "The Adjustment Board was created as a tribunal consisting of workers and management to secure the prompt, orderly and final settlement of grievances that arise daily between employees and carriers regarding rates of pay, rules and working conditions." *Sheehan,* 439 U.S. at 94, 99 S.Ct. at 402 (citations omitted). Although Congress itself did not set up an adjustment board process for the airline industry, it did require the airline industry "to establish a board of adjustment of jurisdiction not exceeding the jurisdiction which may be lawfully exercised ...

under the authority of section 153 of [the RLA]." 45 U.S.C. § 184.

In *Andrews,* the Court concluded:
[I]n at least some situations the [RLA] makes the federal administrative remedy exclusive, rather than merely requiring exhaustion of remedies in one forum before resorting to another. A party who has litigated an issue before the Adjustment Board on the merits may not relitigate that issue in an independent judicial proceeding. He is limited to the judicial review of the Board's proceedings that the [RLA] itself provides. In such a case, the proceedings afforded by 45 U.S.C. § 153 First (i), will be the only remedy available to the aggrieved party.
406 U.S. at 325, 92 S.Ct. at 1565 (citations omitted). The question remaining after *Andrews* was in which "situations the [RLA] makes the federal remedy exclusive."

■ We have accepted an interpretation of *Andrews* as holding that if a "claim is properly characterized as a 'minor dispute,' state law is preempted and [the] exclusive remedy lies under the R.L.A." *Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367, 1368 (9th Cir.) (*Magnuson*), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978), *citing Andrews,* 406 U.S. at 320, 92 S.Ct. at 1563. "Minor disputes concern the interpretation or application of collective bargaining agreements." *International Association of Machinists v. Aloha Airlines Inc.,* 776 F.2d 812, 815 (9th Cir.1985). If the state claims constitute "minor" disputes, that is, disputes which are "inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the RLA," the exclusive jurisdiction of the Board preempts the claims. *Magnuson,* 576 F.2d at 1369; *Lewy,* 799 F.2d at 1290. Thus, "[i]f the basic injury was [the] wrongful discharge, the complaint involves a minor dispute which must be arbitrated following the procedures of the RLA." *Magnuson,* 576 F.2d at 1369.

Edelman contends that the Supreme Court's decision in *Buell* limits this preemption. But the only issue resolved in

*Buell* was "whether the possibility of pursuing a labor grievance under the RLA deprives an employee of his right to bring [a Federal Employers' Liability Act (FELA)] action." 480 U.S. at 559, 107 S.Ct. at 1412. The Court held that "absent an intolerable conflict between the two statutes, we are unwilling to read the RLA as repealing any part of the FELA." *Id.* at 566–67, 107 S.Ct. at 1416. The Court was clearly unwilling to interpret one *federal statute* to preempt another *federal statute. Id.* at 564–65, 107 S.Ct. at 1415–16. The Court, however, cited *Andrews* and explicitly stated that where "an employee [brings] a *state* wrongful discharge claim based squarely on an alleged breach of the collective-bargaining agreement, ... Congress had intended the RLA dispute resolution mechanism to be mandatory for that type of dispute." *Id.* at 566, 107 S.Ct. at 1416 (emphasis added). Thus, *Buell* does not disturb our holdings regarding the preemption of *state* law tort claims. Other circuits have reached this same conclusion. *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1254 (10th Cir.1988); *Leu v. Norfolk & Western Railway Co.*, 820 F.2d 825, 830 n. 9 (7th Cir.1987).

In her second amended complaint, Edelman alleges state law claims for breach of express and implied contracts, wrongful infliction of emotional distress and unfair competition arising from wrongful termination, and defamation resulting from the charges of theft on which the termination was based. The question is whether each claim is a minor dispute and thus preempted.

■ Edelman's initial claim is for breach of an express contract. Although the complaint does not use the words "collective bargaining agreement," it is clear that the "express" contract to which Edelman refers is in fact the Agreement. On its face, then, this claim cannot be interpreted without reference to the Agreement. It, therefore, is preempted. *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 1884, 100 L.Ed.2d 410 (1988) (section 301 of the Labor–Management Re-

lations Act preemption); *Magnuson*, 576 F.2d at 1369.

■ Edelman next alleges that Western breached some form of implied contract. This claim appears to be based on the Union rules and regulations, and Western's personnel policies and procedures governing the employment relationship. We have previously concluded that "[t]o the extent that [such procedures are] inconsistent with the provisions of the collective bargaining agreement, the bargaining agreement controls." *Olguin v. Inspiration Consolidated Copper Co.*, 740 F.2d 1468, 1474 (9th Cir.1984) (section 301 preemption). Accordingly, the interpretation of whether these procedures and regulations created an implied contract clearly would require a court to construe the Agreement. Edelman's breach of implied contract claim is thus "inextricably intertwined" with the Agreement and therefore preempted. *Magnuson*, 576 F.2d at 1369.

■ Edelman also alleges wrongful infliction of emotional distress and defamation. In *Newberry v. Pacific Racing Association*, 854 F.2d 1142 (9th Cir.1988) (section 301 preemption), we faced a similar complaint. The employee alleged that her employer had caused her to suffer great emotional distress because he had conducted an inadequate investigation of theft charges against her before terminating her employment. *Id.* at 1149. We held that the "determination of the validity of her emotional distress claim will require us to decide whether her discharge was justified under the terms of the collective bargaining agreement," and therefore found her claim preempted. *Id.* at 1149–50. Like the employee's complaint in *Newberry*, the resolution of both the emotional distress claim and the defamation claim would require a court to analyze the Agreement to decide whether Edelman's discharge was justified. Therefore, we find these claims preempted also.

■ Edelman also alleges that all of "the actions of Western" to which she refers in her complaint constitute unfair competition in violation of the State of Washington's Consumer Protection Act, Wash.

Rev.Code Ann. §§ 19.86.010–19.86.920 (1989). This claim is clearly preempted. Reading the entire complaint, it is evident that "the gravamen of the complaint is wrongful discharge." *Magnuson*, 576 F.2d at 1369. The complaint is replete with references to Western's "personnel policies and procedures," "union regulations," and Western's investigation and grievance procedures. In essence, Edelman attempts to avoid the exclusive jurisdiction of the RLA over minor disputes by omitting any express reference in her complaint to the Agreement. This is insufficient to avoid preemption. *See Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir.1983) ("Artful pleading by the plaintiff will not be allowed to conceal the true nature of the complaint."); *Magnuson*, 576 F.2d at 1369 (same).

We hold that Edelman's state law claims are preempted because they are "inextricably intertwined" with the interpretation of the Agreement, *see Magnuson*, 576 F.2d at 1369; *Buell*, 480 U.S. at 566, 107 S.Ct. at 1416; *Andrews*, 406 U.S. at 323–25, 92 S.Ct. at 1564–66, and are precisely the type of dispute which "Congress considered it essential to keep ... within the Adjustment Board and out of the courts." *Sheehan*, 439 U.S. at 94, 99 S.Ct. at 402.

## IV

We turn now to Edelman's contentions that the Board violated her procedural due process rights.

### A.

Edelman first argues that the district court erred in granting Western's motion for summary judgment because the court failed to consider all the evidence and pleadings in the record: she contends that the district court failed to consider her due process claim. However, the district judge explicitly addressed Edelman's alleged due process deprivation. The judge stated: "looking at the record as I see it, it doesn't rise to a due process violation." Edelman's claim is entirely without merit.

### B.

Edelman next argues that summary judgment was improper because there is a factual issue as to whether her emotional state at the hearing rendered her unable to present her defense, thereby depriving her of procedural due process.

#### 1.

■ We must initially consider whether the jurisdictional limitations of 45 U.S.C. § 153 First (q) allow us to entertain this particular challenge. Review is limited by the RLA to: "(1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure to the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption." *Sheehan*, 439 U.S. at 93, 99 S.Ct. at 402, citing 45 U.S.C. § 153 First (q). Edelman contends that a claim of denial of due process at an adjustment board hearing is a separate and independent ground, in addition to the three statutory grounds recognized by the RLA, for judicial review of adjustment board decisions. This is an issue of first impression in our circuit.

The Supreme Court has never clearly and explicitly ruled on whether there is federal jurisdiction over a constitutional challenge to a Board's proceedings. It has, however, previously refused to review a due process challenge to a Board decision. *See Sheehan*, 439 U.S. at 95, 99 S.Ct. at 402. In *Sheehan*, the Tenth Circuit had held that the railroad adjustment board's failure to entertain an equitable tolling argument violated the petitioner's due process. *Sheehan v. Union Pacific Railroad Co.*, 576 F.2d 854 (10th Cir.1978). Reversing the Tenth Circuit, the Supreme Court found that the railroad adjustment board had considered and rejected the equitable tolling claim. The Court concluded that reviewing the railroad adjustment board's application of the time limitations expressed in the collective bargaining agreement, whether or not it was clearly wrong, would exceed the scope of the federal courts' statutorily prescribed review powers. *Sheehan*, 439 U.S. at 92–95, 99 S.Ct. at 401–03. The

Court reiterated that a board's order "may be set aside only for the three reasons specified [in section 153 First (q) ]," *id.* at 93, 99 S.Ct. at 402, and stated that it has "time and again emphasized that this statutory language means just what it says." *Id.*

Unfortunately, it is not clear whether the Court in its brief per curiam opinion refused to review the railroad adjustment board's decision on the equitable tolling issue because the board was interpreting the collective bargaining agreement, or whether the Court refused because due process is not one of the three explicitly enumerated grounds for judicial review. The circuits are divided in their interpretation of *Sheehan.*

The Seventh Circuit has expressly rejected the possibility that *Sheehan* forecloses any due process basis for judicial review. *Steffens v. Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees,* 797 F.2d 442, 448 & n. 5 (7th Cir.1986). It continues to assert jurisdiction over due process challenges to the proceedings of the adjustment board. The Fifth Circuit also recognizes a due process claim as a fourth ground for review. *See, e.g., Hayes v. Western Weighing and Inspection Bureau,* 838 F.2d 1434, 1436 (5th Cir.1988).

By contrast, the Eleventh Circuit, in a case remarkably similar to the one before us, held that *"Sheehan* precludes judicially created due process challenges to System Board awards." *Henry v. Air Line Pilots Association International,* 759 F.2d 870, 873 (11th Cir.1985) (*Henry* ). In *Henry,* Delta Airlines discharged a pilot who was suffering from a "paranoid personality disorder." *See Henry v. Air Line Pilots Association,* 585 F.Supp. 376, 378 (N.D. Georgia 1984). Neither the pilot nor his attorney offered a medical defense at the system board hearing. *Id.* Then, on appeal, the pilot argued that the "System Board denied him due process of law by failing to recognize and consider his medical disorder." *Henry,* 759 F.2d at 873. Citing *Sheehan,* the Eleventh Circuit declined to entertain this challenge. *Id.*

Although the situation in *Henry* is nearly identical to the one before us, we feel constrained to conclude that a due process challenge does provide an independent basis for our jurisdiction. We reason to this conclusion on the basis of analogous Ninth Circuit and Supreme Court authority.

Just recently, in *Kicking Woman v. Hodel,* 878 F.2d 1203 (9th Cir.1989), we faced the question "whether an exception to 25 U.S.C. § 372's bar to judicial review of [Board of Indian Appeal's] decisions exists in cases, in which a prospective plaintiff raises a due process challenge to the conduct of the ... proceedings." *Id.* at 1205. Seeking to define explicitly the issue, we reiterated that "[t]he narrow question before us here is whether, in the face of a general bar to judicial review, the federal courts have jurisdiction to hear a constitutional challenge to actions (i.e. procedures, proceedings, or decisions) authorized by a specific statute, in the absence of a facial attack on the statute itself." *Id.* at 1205 n. 7. This is precisely the issue presented to us.

After analyzing relevant Supreme Court authority and the legislative history of 25 U.S.C. § 372, we held in *Kicking Woman* that, despite the bar to judicial review in section 372, we had jurisdiction to hear a constitutional challenge to the Board of Indian Appeal's proceedings. *Id.* at 1207. Although we are interpreting a different statute in the present appeal, it would be inconsistent for us not to follow the reasoning of *Kicking Woman.*

Our decision in *Kicking Woman* is not without Supreme Court support. It is a "well-established principle that when constitutional questions are in issue, the availability of judicial review is presumed." *Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977) (citations omitted); *see Webster v. Doe,* 486 U.S. 592, 108 S.Ct. 2047, 2053, 100 L.Ed.2d 632 (1988) (concluding that "where Congress intends to preclude judicial review of constitutional claims, its intent to do so must be clear"). In *Califano,* the Supreme Court concluded that constitutional questions were an exception to a provision of

the Social Security Act which foreclosed judicial review of certain decisions by the Secretary of (at that time, Health, Education and Welfare). 430 U.S. at 108–09, 97 S.Ct. at 985–86. The Court emphasized that "[c]onstitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions." *Id.* at 109, 97 S.Ct. at 986.

As we pointed out in *Kicking Woman,* however, the Supreme Court "has implied that Congress might under some circumstances be able to enact a statute which foreclosed judicial review even of constitutional claims, if an intent to do so was manifested by 'clear and convincing evidence,' although ... there would be 'a serious constitutional question of the validity of [such a] statute.'" 878 F.2d at 1207 n. 9, *quoting Weinberger v. Salfi,* 422 U.S. 749, 763, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522 (1975). Nevertheless, section 153 First (q) does not present such a circumstance. Its legislative history does not "manifest by clear and convincing evidence" that Congress intended to foreclose judicial review of constitutional claims. *See* S.Rep. No. 1201, 89th Cong.2d Sess. at 12449–50, *reprinted in* 1966 U.S.Code Cong. & Admin. News 2285, 2287. We, therefore, hold that a constitutional challenge constitutes an independent ground, in addition to the three expressly stated in section 153 First (q), upon which a federal court has jurisdiction to review decisions of a system adjustment board.

## 2.

█ Having concluded that we have jurisdiction to hear a constitutional challenge, we next consider whether Edelman was entitled to due process before the Board and, if so, how much process was due. Because we conclude that the latter issue is dispositive, we discuss it first.

" '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'" *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (*Mathews*), *quoting*

*Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (*Loudermill*), *quoting Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). Edelman contends that she was effectively denied a hearing because her emotional problems prevented her from presenting her case. Her argument might be persuasive if the Board, in effect, precluded her from presenting her defense. *See Hall v. Eastern Air Lines, Inc.,* 511 F.2d 663, 664 (5th Cir.1975) (denial of due process where adjustment board refused to consider employee's alibi defense). However, this is not such a case.

Edelman seems to suggest that the Board prevented her from presenting her defense by requiring her to go forward with the hearing despite her distressed state. However, at no point in the proceedings did either Edelman or her attorney request that the Board continue or adjourn the hearing. Thus, Edelman cannot now claim that she was forced to proceed when the Board was never requested to continue the hearing.

It is difficult to discern whether Edelman is advancing any additional argument on this issue. Clearly her brief provides no certain clue. From her general statements it might be that she is arguing that even though the Board did not *require* her to proceed, the Board denied her due process by *allowing* her to proceed. If so, she cites no cases for this novel proposition, and we have found none. If that is her argument, we are required to apply the *Mathews* analysis to determine whether challenged administrative procedures are constitutionally sufficient:

[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by

the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

424 U.S. at 335, 96 S.Ct. at 903. Thus, in order to determine whether the Board, in addition to its obligation not to preclude a party from presenting his defense, also has an affirmative obligation to determine whether a party is mentally competent, we must engage in *Mathews* tripartite balancing test.

Of course, Edelman asserts a significant interest in continued employment with Western. Edelman's "interest in retaining employment cannot be gainsaid." *Loudermill*, 470 U.S. at 543, 105 S.Ct. at 1494.

Next, we also must inspect "the risk of an erroneous deprivation of [Edelman's] interest through the procedures used." *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903. The Board itself is structured to protect the interests of a grievant like Edelman. The presence of two Union members on the Board helps ensure that the interests of a fellow Union member will be protected and that grievance proceedings will be conducted fairly. Therefore, the absence of a requirement to inquire *sua sponte* into a party's competence creates little risk that an incompetent party will be erroneously deprived of his asserted interest. That is especially true here where Edelman was represented by a member of the Union as well as by her attorney.

Finally, the government has an important interest in allowing minor disputes under the RLA to be settled in an efficient and informal manner. *See* 45 U.S.C. § 151a (stating that one of the primary purposes of the RLA is "to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions"). It would be contrary to the entire scheme established by Congress to require the members of the Board—two representatives from the management and two from the Union, all of whom are generally without legal training—to question a party's competence *sua sponte*.

Recognizing that "due process is flexible and calls for such procedural protections as the particular situation demands," *Mathews*, 424 U.S. at 334, 96 S.Ct. at 902, we hold that the balancing factors tip towards the conclusion that Edelman received all the process she was due. Although she has an important interest affected by the Board action, the risk of an erroneous deprivation by not requiring the *sua sponte* inquiry is minimal, and the governmental interest of an expeditious and informal resolution of disputes is substantial.

## V

Edelman next contends that the Board failed to comply with the requirements of the RLA because it did not enter an express finding on the issues presented to it—whether the alleged theft occurred and whether the termination was justified—and failed to keep a proper record. We have jurisdiction to review these claims. *See Sheehan*, 439 U.S. at 93, 99 S.Ct. at 402; 45 U.S.C. § 153 First (q) (establishing jurisdiction for claims relating to adjustment board compliance with the RLA).

### A.

The RLA requires that the Board rule on the merits of a grievant's dispute. 45 U.S.C. § 153 First (m) (concluding that "the awards shall be final and binding upon both parties to the dispute"). The complete text of the Order is as follows: "The termination letter, dated March 27, 1985, shall be removed from the grievant's file and in its place the grievant shall submit a letter of resignation, dated March 27, 1985. The grievant's resignation shall be deemed wholly voluntary on her part." Edelman contends this language is ambiguous and inconsistent because it does not resolve whether her termination was justified. We agree that the Order could have been draft-

ed in greater detail and with more precision. However, the absence of a more thorough explanation does not violate the RLA.

■ It is well established that "[a]rbitrators have no obligation to the court to give their reasons for an award." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960) (*Enterprise Wheel*); *see also Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198, 203, 76 S.Ct. 273, 276, 100 L.Ed. 199 (1956). Moreover, "[a] mere ambiguity in the [decision] accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *Enterprise Wheel*, 363 U.S. at 598, 80 S.Ct. at 1361; *Stead Motors v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1206–09 (9th Cir.1989). This is especially true where "[i]t is not apparent that [the Board] went beyond the submission." *Enterprise Wheel*, 363 U.S. at 598, 80 S.Ct. at 1361.

Edelman's submission to the Board specifically requested "such other, further or different relief as this Board may be deemed [sic] just and proper." The Order provided just that. The depositions of the Board members contained in the record before us plainly reveal that the Order was a compromise. In light of the record, it is clear that the Board based its award on its resolution of the merits of Edelman's termination. We, therefore, conclude that the Board, in issuing this Order, complied with the requirements of the RLA.

### B.

■ Edelman next contends that the Board did not "confine[ ] itself to matters within its jurisdiction," 45 U.S.C. § 153 First (q), because it failed to keep a record of the proceedings in accordance with the requirements of the Agreement. Edelman cites *Wilson v. Chicago & North Western Transportation Co.*, 728 F.2d 963, 967 (7th Cir.1984), for the proposition that the Board's failure to follow *procedural* provisions in the applicable collective bargaining agreement amounts to a failure to confine itself to matters within its jurisdiction.

In *Wilson*, the Board ignored "explicit and unambiguous language" in the collective bargaining agreement that required a timely hearing for the employee. *Id.* at 966. The Seventh Circuit concluded that the Board's circumvention of these time limitations exceeded the Board's jurisdiction. We have previously held, however, that a federal court does not have jurisdiction, pursuant to 45 U.S.C. § 153 First (q), to hear a petitioner's claim that the adjustment board misinterpreted a provision of the collective bargaining agreement relating to the timeliness of notice. *Devita v. Burlington Northern, Inc.*, 494 F.2d 347, 348–49 (9th Cir.), *cert. denied*, 419 U.S. 869, 95 S.Ct. 128, 42 L.Ed.2d 108 (1974). Moreover, in *Sheehan*, the Supreme Court explicitly held that an adjustment board "was acting within its jurisdiction and in conformity with the requirements of the [RLA] by determining the question of whether the time limitation of the governing collective-bargaining agreement was tolled." 439 U.S. at 93, 99 S.Ct. at 402. Thus, *Devita* and *Sheehan* make it clear that we are not at liberty to reinspect the Board's interpretation of a procedural provision of the Agreement.

■ Even if the Board had completely failed to comply with an unambiguous procedural requirement in the Agreement, that failure would not constitute grounds for invalidating the Board's decision in this case. Edelman did not object to the lack of a record during the Board hearing, and she offers nothing in the record on appeal which suggests that she was prejudiced by the Board's failure to maintain a more complete record. *See West Rock Lodge No. 2120 v. Geometric Tool Co.*, 406 F.2d 284, 286–88 (2d Cir.1968) (concluding that it was improper to set aside an arbitrator's award where no objection was made to the arbitrator's delay and where there was no showing of harm).

### VI

Finally, because we conclude that the district court properly granted summary

judgment to Western, we hold that it also properly denied Edelman's motion for reconsideration.

AFFIRMED.