**UNITED TRANSPORTATION UNION and C.J. Finks, Petitioners–Appellants,**

v.

**UNION PACIFIC RAILROAD COMPANY, Respondent–Appellee.**

No. 95–17193.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 8, 1996.

Decided June 25, 1997.

Kevin C. Brodar, United Transportation Union, Cleveland, OH, for petitioners-appellants.

Brenda J. Council, Union Pacific Railroad Company, Omaha, NE, for respondent-appellee.

Before: HUG Chief Judge, and REAVLEY* and LEAVY, Circuit Judges.

HUG, Chief Judge:

Appellants brought an action in the United States District Court for the District of Nevada to enforce an arbitration award ordering the reinstatement of appellant C.J. Finks to his position as train conductor for Appellee Union Pacific Railroad. The district court granted Union Pacific's motion for summary judgment, and appellants timely appealed.

## I. Background

Pursuant to authority conferred by the Federal Railroad Safety Act of 1970, 45 U.S.C. § 421 *et seq.* (repealed 1994) (continuing authority provided by 49 U.S.C. § 20140(f) (1997)), the Department of Transportation has promulgated regulations banning the use of alcohol and certain drugs by

---

* Thomas R. Reavley, Senior Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designa-

tion.

covered railroad employees, and requiring that those employees be tested on a random basis for purposes of detecting such proscribed use. 49 C.F.R. § 219 Subparts B–G. Union Pacific has adopted its own Rule G, which among other things prohibits the illegal use of controlled substances either on or off duty.

Appellant C.J. Finks ("Finks") worked as a train conductor on a Union Pacific Railroad ("Union Pacific") train from Las Vegas, Nevada to Yermo, California on May 14, 1991. Finks' employment with Union Pacific was covered under a collective bargaining agreement between Union Pacific and the United Transportation Union ("the Union"). Upon the train's arrival at Yermo, Finks was tested for drug use pursuant to Union Pacific's Rule G. Finks tested positive for drug use, and was charged with a Rule G violation.

The federal regulations prescribe the procedures that are to be undertaken when an employee tests positive for drug use. First, the railroad is required to "immediately remove the employee from covered service" once it determines that the employee has tested positive for drugs. 49 C.F.R. § 219.104(a). The railroad must notify the employee of the reason for his removal from covered service. 49 C.F.R. § 219.104(b). The employee then may demand a post-suspension hearing before a presiding officer of the railroad, other than the official charging the drug use. 49 C.F.R. § 219.104(c). If the employee remains dissatisfied with the result of such post-suspension hearing, he may appeal that determination pursuant to the terms of the applicable collective bargaining agreement. 49 C.F.R. § 219.104(c)(3).

After removing Finks from his position as train conductor, Union Pacific offered Finks entry into an employee assistance program that would provide him with evaluation, treatment and reinstatement if and when recommended by the program. Finks declined the offer, maintaining that the charges of drug use were false. Instead, Finks and the Union challenged Union Pacific's charges. The dispute could not be resolved to the parties' mutual satisfaction, and was eventually referred to the National Railroad Adjustment Board ("the Board"), pursuant to 45 U.S.C. § 153 First.[1] Finks and the Union contended that Finks was denied due process because of alleged deficiencies and discrepancies in the chain of custody of Finks' urine sample, and that independent evidence contradicted Union Pacific's finding that Finks had used cocaine.

The Board rejected Finks' argument that he was denied a fair hearing due to chain of custody irregularities, and rejected most of Finks' evidence supporting his denial of drug use. The Board concluded that Union Pacific had acted reasonably when it dismissed Finks on the basis of the positive test result. However, the Board also noted that "no system of [drug] testing is perfect and the possibility of a false positive exists." The Board further concluded that Finks' denial of drug use was believable, and that his refusal to accept the rehabilitation/reinstatement offer supported his claim of innocence. In light of these contradictory considerations, the Board ordered Union Pacific to reinstate Finks to his old position, but denied his claim for back wages and benefits.

When Union Pacific refused to comply with the reinstatement order, Finks and the Union brought an enforcement action in district court for the District of Nevada, pursuant to 45 U.S.C. § 153 First(p), which allows an employee to sue to enforce a Board-issued arbitration award. Union Pacific filed a counterclaim seeking to set aside the arbitration award under 45 U.S.C. § 153 First(q), which allows any party aggrieved by a Board order to sue to have the order set aside or to have the matter remanded to the Board for further findings.

---

1. Section 153 First established the National Railroad Adjustment Board to resolve, among other things, "disputes between an employee ... and a carrier ... growing out of grievances or out of the interpretation or application of agreements concerning ... working conditions" that could not be resolved to the satisfaction of both parties through the procedures established under the applicable CBA. 45 U.S.C. § 153 First(i). Disputes between an employee charged with illegal drug use and his employer are among the disputes subject to adjustment by the Board under section 153 First(i). 49 C.F.R. § 219.104(c)(4).

On cross motions for summary judgment, the district court granted judgment in favor of Union Pacific and set aside the Board's reinstatement order. The court reasoned that the reinstatement violated the "well-defined and dominant public policy against drug use in the railroad industry which is reflected in the FRA regulations requiring dismissal from service and prohibiting the reinstatement of an employee who has tested positive for drugs without the completion of a rehabilitation program." Finks and the Union timely appealed.

## II. Discussion

Appellants make essentially two contentions on appeal. First, they argue that the district court lacked jurisdiction to set aside an arbitration award of the Board on the grounds that it violated public policy. Second, they contend that, even if public policy provides a basis for nullifying an arbitration award, the district court improperly concluded that Finks' reinstatement would violate a public policy regarding drug use in the railroad industry.

We review *de novo* the district court's grant of summary judgment, *Employers Insurance of Wausau v. National Union Fire Insurance Co. of Pittsburgh*, 933 F.2d 1481, 1485 (9th Cir.1991), and we reverse.

### A.

As noted above, the district court's review of the Board's decision was based upon 45 U.S.C. § 153 First(p), which allows an employee to bring an action against a carrier to enforce an arbitration award, and 45 U.S.C. § 153 First(q), which allows any party aggrieved by a Board award to bring suit to set aside the award in whole or in part or to remand the proceeding to the Board for further action. Federal court review under these provisions is "among the narrowest known to the law." *Edelman v. Western Airlines, Inc.*, 892 F.2d 839, 842 (9th Cir. 1989) (quotations omitted). The statute authorizes the district court to set aside an award or to remand the proceeding only upon three grounds: (1) for failure of the Board to comply with the requirements of § 153 First, (2) for failure of the order "to conform, or confine itself, to matters within the scope of the division's jurisdiction," or (3) for fraud or corruption by a member of the division making the order. 45 U.S.C. § 153 First(p) & (q).

Congress intended that narrow review would advance the goal of prompt and final settlement of minor labor disputes in the railroad industry by "keeping [such] disputes within the Adjustment Board and out of the courts." *Union Pacific Railroad Co. v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978) (per curiam). In light of this congressional purpose and the plain language of the statute, the Supreme Court has stated that a federal court may set aside an award of the Board only upon one of the three grounds enumerated in the statute: "[The Act] unequivocally states that the findings and order of the [Board] shall be conclusive of the parties and may be set aside only for the three reasons specified therein. We have time and again emphasized that this statutory language means just what it says." *Id.* (quotations omitted).

■ Appellants contend that § 153 First, as interpreted by the Supreme Court in *Sheehan*, admits of no "public policy" basis for setting aside a Board award. The question whether a Board award may be set aside if it is determined to violate public policy has yet to be answered in this circuit, although we have previously held that an alleged due process violation provided an independent ground, in addition to the three enumerated in the statute, for reversing an arbitration award under § 153. *Edelman*, 892 F.2d at 847.[2] A divided panel of the Eighth Circuit has held that public policy does provide a proper basis for federal court review of Board awards, *Union Pacific Railroad Co. v. United Transportation Union and Madison*, 3 F.3d 255 (8th Cir.1993), and several other circuits have applied, without discussion,

2. The award reviewed in *Edelman* was issued by a System Board of Adjustment, the body constituted to arbitrate minor labor disputes in the airline industry. The standard of review set forth in section 153, for review of National Railroad Adjustment Board awards, applies to the airline industry's System Board of Adjustment. *Edelman*, 892 F.2d at 842.

public policy review in this context, *see Northwest Airlines v. Air Line Pilots Association Int'l,* 808 F.2d 76, 83 (D.C.Cir.1987) (review of System Board of Adjustment award); *Delta Air Lines v. Air Line Pilots Association Int'l,* 861 F.2d 665 (11th Cir. 1988).

We need not decide the issue here, however, because we conclude below that even if public policy provides a proper basis for setting aside a Board arbitration award, in light of the Board's failure to determine whether Finks had in fact used drugs, the district court erred in concluding that the award reinstating Finks would violate a public policy against drug use in the railroad industry.

### B.

Even where judicial review of arbitration awards under the public policy exception is well-established, the scope of such review is "extremely narrow." *See American Postal Workers Union v. United States Postal Service,* 789 F.2d 1, 8 (D.C.Cir.1986); *see also Delta Air Lines,* 861 F.2d at 670 ("examples of arbitration results that so offend public policy that they should be set aside by a court are not readily to be found"). To vacate an arbitration award on public policy grounds, the court must find (1) "an explicit, well-defined policy" and (2) that the policy "is one that specifically militates against the relief ordered by the arbitrator." *United Food & Commercial Workers Int'l Union v. Foster Poultry,* 74 F.3d 169, 174 (9th Cir. 1995) (quotations omitted). Accordingly, the district court was correct to set aside this award on public policy grounds only if there exists an "explicit, well-defined" public policy that specifically militates against Finks' reinstatement under the circumstances here presented. *See Stead Motors v. Automotive Machinists Lodge 1173,* 886 F.2d 1200 (9th Cir.1989).

The first task of the court reviewing the arbitration award, then, is to frame the public policy purportedly implicated by this reinstatement award. The district court determined that "[t]here is an explicit, well-defined, and dominant public policy against drug use in the railroad industry which is reflected in the FRA regulations requiring dismissal from service and prohibiting the reinstatement of an employee who has tested positive for drugs without completion of a rehabilitation program," and that the arbitrator's award requiring reinstatement of Finks without completion of a rehabilitation program violated that public policy.

Contrary to the district court's characterization, however, the federal regulations do not forbid the reinstatement of "an employee who has tested positive for drugs without completion of a rehabilitation program." Section 219.104(a) requires that the railroad remove from covered service any employee it determines has violated the drug use prohibitions. However, this same provision also requires that, after removal from service, the employee have the right to appeal the railroad's determination by way of a post-suspension hearing, together with any other procedures prescribed by the applicable collective bargaining agreement and by 45 U.S.C. § 153 First. 49 C.F.R. § 219.104(a)-(c). Final appeal to the Board, of the railroad's drug use determination, is one of the employee's procedural rights guaranteed by the regulations and by section 153 First.

The regulations next provide that "an employee *who has been determined to have violated* [the drug and alcohol prohibitions] ... shall not be returned to covered service unless" the employee proceeds through counselling and rehabilitation programs. 49 C.F.R. § 219.104(d) (emphasis added). The regulations do not explicitly establish what it means to have "been determined to have violated" the drug use proscription, such that § 219.104(d)'s prohibition against reinstatement without rehabilitation is triggered. The district court in effect concluded that Finks was "determined" to have used drugs merely by virtue of Union Pacific's positive drug test results.

However, such a reading of § 219.104(d) is inconsistent with the statute and regulations because it renders vacant an employee's right to appeal the railroad's determination through the procedures set forth in the regulations, the CBA and § 153 First, and because it violates the statute's mandate that the Board's determinations be "final and

binding upon both parties to the dispute," 45 U.S.C. § First(m); *see also Madison*, 3 F.3d at 262 ("If the Board had reinstated Madison after finding that the allegedly positive test results were invalid ... we would be obliged to enforce the [reinstatement] award"). Rather, we read § 219.104(d) to proscribe reinstatement of an employee who has been determined, as a result of all procedures due the employee under § 219.104, to have violated the drug use prohibition, and who has failed to complete the required rehabilitation program. Only by reading § 219.104(d) in this way does the court give full effect to the employee's statutorily-protected procedural rights, and due respect to the Board's factual determinations. This reading is also consistent with the Secretary's placement of the reinstatement regulation *after* the provisions relating to the employee's rights of appeal from the railroad's determination that the employee used drugs. 49 C.F.R. § 219.104.

■■■ The Board in this case never made a determination whether Finks had in fact used drugs on the day in question. Rather, it merely noted the credibility of the evidence both in support of and contrary to Union Pacific's charges against Finks, and fashioned a compromise remedy—reinstatement without back pay. In the absence of this finding, the district court could conclude that Finks' reinstatement violated public policy only by framing the relevant public policy as one against reinstatement·of employees who test positive for drugs, or by making its own finding that Finks had in fact used drugs on the day in question. We have concluded that the relevant public policy does not specifically and explicitly militate against reinstatement of employees who have merely tested positive for drugs. And a court reviewing an arbitration award under § 153 First is not permitted to make factual determinations that the Board failed to make. *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 44–45, 108 S.Ct. 364, 374–75, 98 L.Ed.2d 286; *Madison*, 3 F.3d at 257 n. 3. Accordingly, the district court erred in concluding, without the benefit of a Board finding on the issue of Finks' actual guilt, that the reinstatement award violated public policy.

## C.

This court has yet to address the proper course for the district court to take when presented with a public policy challenge to an award in the absence of a specific finding by the Board on the factual question at issue. While we conclude that the district court erred in vacating the arbitral award, we likewise reject appellants' position that the award must stand in the absence of a specific finding that Finks in fact used drugs. We conclude instead that the district court should have remanded the proceedings to the Board to make the determination whether Finks used drugs as charged.

As noted above, the federal regulations provide that an employee have an opportunity to appeal a railroad's determination that he or she violated the drug or alcohol prohibitions. The regulations further require that the officer hearing the appeal "make separate findings as to [the employee's] compliance with" the alcohol and drug prohibitions. 49 C.F.R. § 219.104(c)(1).

The regulations contemplate that the results of this post-suspension hearing, like other disputes between railroads and their employees, may be appealed to the Board for final resolution by a party aggrieved by the ruling of the railroad's hearing officer. 49 C.F.R. § 219.104(c)(3); *see also* 45 U.S.C. § 153 First(i). On such an appeal the findings and order of the Board supersede those of the railroad's hearing officer. 45 U.S.C. § 153 First(p). Because the Board functions as the final arbiter of appeals from drug-related suspensions, and because the regulations reflect that a determination of the employee's actual guilt or innocence is central to the administration of the safety regulations, we conclude that the Board is under a statutory obligation to make a specific finding as to the employee's compliance or non-compliance with the substance abuse provisions. Indeed, it makes little sense to require a specific finding of guilt or innocence at one stage of the appeal, only to allow the Board to muddle the proceedings in a superseding review that fails to affirm or reverse the required finding.

We therefore conclude that the proper course of action here is to remand the pro-

ceedings to the Board pursuant to the judicial review provision of § 153 First(q), on the ground that, because the Board failed to discharge its statutory duty to make a finding as to Finks' actual guilt or innocence, the Board's order "fail[s] to conform ... itself [ ] to matters within the scope of the [Board's] jurisdiction." 45 U.S.C. § 153 First(q). By doing so, we give effect to Congress's intent that railroad operations be free from the dangers posed by drug and alcohol use by employees, while showing due respect for the Board's authority to resolve, in the final instance, factual disputes between railroads and their employees.

### III.

We **REVERSE** and **REMAND** to the district court with instructions that the matter be remanded to the Board for further proceedings consistent with this opinion.