Nichkol MELANSON,
Plaintiff–Appellant,

v.

UNITED AIR LINES, INC.,
Defendant–Appellee.

No. 89–15566.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 6, 1990.

Decided April 24, 1991.

**560**

Edith J. Benay, San Francisco, Cal., for plaintiff-appellant.

William J. Dritsas, Tyler A. Brown, Seyfarth, Shaw, Fairweather & Geraldson, San Francisco, Cal., Michael D. Robbins, Houston, Tex., for defendant-appellee.

Before CANBY, NOONAN and RYMER, Circuit Judges.

CANBY, Circuit Judge:

Appellant Nichkol Melanson appeals the dismissal of her state law tort action against United Air Lines, Inc. ("United") for negligent and intentional misrepresentation, concealment, and promise without intent to perform. Melanson originally filed this action in state court, but United removed it to federal court, asserting diversity jurisdiction under 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1331 and 45 U.S.C. § 151. United then moved to dismiss the case. The district court granted United's motion, finding that Melanson's claims are preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.* We affirm.

*FACTS*

In 1985, United purchased the Pacific division of Pan American Airlines ("Pan Am"). As part of the acquisition, United agreed to hire 1202 of Pan Am's flight attendants to work the newly acquired routes. In September, 1985, the Association of Flight Attendants ("AFA") opened negotiations with United over employment conditions for the transferring flight attendants. A few weeks later, United notified the flight attendants of the acquisition and invited them to transfer to United. United also informed the flight attendants that work rules and seniority integration covering their new employment at United were being negotiated with the AFA, and sent them a description of United's weight requirements for flight attendants. In December, 1985, the AFA ratified the collective-bargaining agreement ("CBA") which included the terms and conditions for the transfer of employees from Pan Am to United. The weight program is incorporated in the CBA as a term and condition of employment between United and members of the bargaining unit.

Melanson was among those Pan Am flight attendants eligible to transfer to United. She had served as a flight attendant for nearly twenty-two years. She alleges that United, while recruiting her, indicated that the weight requirements would not apply to the transferring flight attendants. At the time, Melanson was undergoing hormone treatment for infertility that caused her to gain weight. She disclosed this fact to United and informed the company that she would not transfer if she were subject to weight requirements that would jeopardize her infertility treatment. Through its agents, United assured Melanson that it was not concerned with her weight. In reliance upon this representation, Melanson transferred to United.

Shortly after Melanson became a United employee, she was suspended without pay for fourteen months for failing to comply with United's weight policy. At the time of her suspension, Melanson was a bargaining unit employee covered by the CBA. Along with other flight attendants, Melanson brought a complaint regarding the application of United's weight program in her case before the System Board of Adjustment ("Board") as required by the CBA and the RLA, 45 U.S.C. § 184. After a hearing, the Board reinstated Melanson and awarded her back pay, but required her to submit to an individualized weight program. Melanson then stopped her infertility treatments in order to lose weight to avoid termination. This action followed.

*DISCUSSION*

A. Standard of Review

We review *de novo* the district court's dismissal of Melanson's claims and its statutory interpretation of the RLA. *See Grote v. Trans World Airlines, Inc.,* 905 F.2d 1307, 1309 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 386, 112 L.Ed.2d 397 (1990); *Lewy v. Southern Pacific Transp. Co.,* 799 F.2d 1281, 1286 (9th Cir.1986). In

reviewing the dismissal granted under Fed. R.Civ.P. 12(b)(6), we accept as true the allegations of Melanson's complaint. *Grote*, 905 F.2d at 1308 n. 1.

## B. The Effect of Melanson's Employment Status

■ Melanson first argues that because she was not an employee of United when first informed that she would not be subject to United's weight program, this dispute did not arise within an employment context and is not covered by the CBA or the RLA. We decline to hold that claims arising from conduct occurring prior to the commencement of a formal employment relationship are automatically screened from the preemptive force of the RLA.

■ Through the federal labor scheme, Congress has established a system of collective bargaining. Allowing an employee or employer, by virtue of an individual agreement, to establish an employment status different from that of other employees would undermine the efficacy of collective bargaining. Accordingly, the Supreme Court has ruled that the CBA supersedes inconsistent individual employment contracts. *See J.I. Case Co. v. NLRB*, 321 U.S. 332, 337–39, 64 S.Ct. 576, 580–81, 88 L.Ed. 762 (1944); *see also Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 346–47, 64 S.Ct. 582, 585, 88 L.Ed. 788 (1944) (The principles of *J.I. Case Co.* apply in the RLA context). The effect on the federal labor scheme of allowing individual agreements that conflict with the CBA would be the same whether the agreement is reached prior to or during a formal employment relationship. The timing of the agreement or alleged tortious act, then, is not necessarily determinative.[1] It is the relationship of the

claim to the CBA, regardless of the plaintiff's employment status, that guides the preemption analysis. The pertinent question, therefore, is whether Melanson's claims are preempted.[2]

## C. Effect of Prior Arbitration

■ United argues that Melanson's claim was the subject of a prior arbitration procedure and cannot be raised again in this action. We disagree. The issue before the Board was:

> Whether the company ha[d] violated the Collective Bargaining Agreement by imposing discipline, up to and including termination, on several of [the] former Pan Am flight attendants, through an unreasonable and arbitrary application of its weight program....

Decision of the System Board of Adjustment, Application of United Weight Program to Former Pan American Flight Attendants 1 (Jan. 16, 1988). The issue in this appeal, however, is different. Rather than alleging a misapplication of a work rule, as she did before the Board, Melanson argues here that United fraudulently induced her to transfer by misrepresenting that the weight requirements would be waived in her case. This issue was not fully litigated before the Board. Again, the real question is whether Melanson's claims are preempted by the RLA.

## D. Preemption

■ Congress enacted the RLA to promote stability in labor-management relations by providing a framework for resolving labor disputes in the railroad industry. *See Atchison, Topeka & Santa Fe Railway Co. v. Buell*, 480 U.S. 557, 562, 107 S.Ct. 1410, 1413, 94 L.Ed.2d 563 (1987).

---

1. This reasoning is not limited to contract claims. Nearly any contract claim can be restated as a tort claim. The RLA's grievance procedure would become obsolete if it could be circumscribed by artful pleading. *See Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367, 1369 (9th Cir.), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978).

2. Melanson also contends that the CBA did not apply to her at the time of the alleged misrepresentation because the AFA did not represent her

in the CBA negotiations until she became a United employee and joined the AFA. This argument is without merit. The Supreme Court has stated that "[t]he labor organization chosen to be the representative of the craft or class of employees is ... chosen to represent all of its members, regardless of their union affiliations or want of them." *Steele v. Louisville & Nashville Railroad Co.*, 323 U.S. 192, 200, 65 S.Ct. 226, 231, 89 L.Ed. 173 (1944).

Title II of the RLA extends the RLA's coverage to the airline industry. 45 U.S.C. § 181. Congress specifically intended the RLA to keep airline labor disputes out of the courts. *See Lewy*, 799 F.2d at 1289. Consequently, the RLA provides for mandatory administrative grievance procedures as the exclusive remedy in claims arising from "minor disputes" under collective-bargaining agreements. *See Andrews v. Louisville & N.R. Co.*, 406 U.S. 320, 322–23, 92 S.Ct. 1562, 1564, 32 L.Ed.2d 95 (1972). "Minor disputes" are the "grievances that arise daily between employees and carriers regarding rates of pay, rules and working conditions." *Union Pacific Railroad Co. v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978). We have also defined "minor disputes" as those which are "arguably" governed by the CBA or have a "not obviously insubstantial" relationship to the labor contract, *Magnuson*, 576 F.2d at 1369–70, "are 'inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the RLA,' " *Edelman v. Western Airlines, Inc.*, 892 F.2d 839, 843 (9th Cir.1989) (quoting *Magnuson*, 576 F.2d at 1369), or which involve the interpretation of a current collective-bargaining agreement. *See International Association of Machinists & Aerospace Workers v. Republic Airlines*, 761 F.2d 1386, 1390 (9th Cir.1985); *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir.1983).

■ In resisting preemption, Melanson asks us to apply, by analogy, cases discussing preemption under § 301 of the Labor–Management Relations Act, 42 U.S.C. § 185. She cites *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) in support of her argument that state law remedies "in-

dependent" of the CBA are not preempted by § 301. *Lingle* held that claims are "independent" when "the state-law claim can be resolved without interpreting" the collective-bargaining agreement. *Id.* at 410, 108 S.Ct. at 1883. We have made clear, however, that the narrower test for § 301 preemption under *Lingle* is not necessarily determinative of preemption under the RLA, because "preemption under the RLA is broader than under § 301." *Grote v. Trans World Airlines, Inc.*, 905 F.2d 1307, 1310 (9th Cir.1990). Thus, some claims that might escape preemption under *Lingle* and § 301 may nevertheless be preempted under the RLA.[3]

We therefore review Melanson's claims to determine whether they are "minor disputes" under the RLA; that is, whether they " 'concern the interpretation or application of' " the CBA. *Edelman*, 892 F.2d at 843 (quoting *Int'l Ass'n of Machinists v. Aloha Airlines, Inc.*, 776 F.2d 812, 815 (9th Cir.1985)). A claim is also considered a "minor dispute" if it is " 'inextricably intertwined with the grievance machinery of' " the CBA or RLA. *Id.*, (quoting *Magnuson*, 576 F.2d at 1360).

■ Melanson asserts three theories under California law which comprise her cause of action for fraud: 1) negligent or intentional misrepresentation; 2) concealment; and 3) promise without intent to perform. To prevail on her misrepresentation theory, Melanson must show, *inter alia*, that United made a false representation of material fact. *See Universal By-Products, Inc. v. City of Modesto*, 43 Cal. App.3d 145, 151, 117 Cal.Rptr. 525, 528 (1974); Cal.Civ.Code §§ 1709, 1710. To demonstrate the falsity of United's alleged

---

**3.** An example of the distinction may be drawn from two cases that predate *Lingle*. Melanson relies in part on *Tellez v. Pacific Gas & Elec. Co.*, 817 F.2d 536, 538–39 (9th Cir.), *cert. denied*, 484 U.S. 908, 108 S.Ct. 251, 98 L.Ed.2d 209 (1987). In *Tellez*, we found that section 301 did not preempt claims of defamation and intentional infliction of emotional distress because the claims arose from the employer's distribution of a letter alleging that the plaintiff had bought cocaine on the job. We held that the claims could be resolved without reference to the CBA.

*Tellez* is to be contrasted with *Beers v. Southern Pacific Transp. Co.*, 703 F.2d 425, 428–29 (9th Cir.1983), in which we held that the RLA preempted a state law claim for intentional infliction of emotional distress arising from harassment on the job, because the claim could have been made the subject of RLA grievance arbitration.

As we point out later in the text, however, Melanson's claims do not even meet the standard of *Tellez;* they cannot be resolved without reference to the CBA.

representations regarding its weight program, Melanson must show that the relevant provisions of the CBA differ significantly from those representations. This showing requires reference to and interpretation of the terms of the CBA. Resolution of this misrepresentation claim, then, depends on an analysis of the CBA, and the alleged tortious activity is at least "arguably governed" by the CBA. Therefore, the district court properly dismissed Melanson's misrepresentation claim as preempted.

■ The elements of Melanson's second fraud claim, concealment, are: 1) suppression of a material fact; 2) by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; 3) with intent to deceive a person unaware of the concealed fact and who would not have acted had he known of the fact. Cal.Civ.Code §§ 1709, 1710. Melanson contends that United improperly concealed its intention to waive its weight requirements for hiring purposes only and to reinstate the program once the new flight attendants were hired. She also alleges that United fraudulently concealed the fact that medical exceptions to the weight program were limited to life-threatening situations and did not extend to weight gain caused by medication or medical treatment.

To determine whether United concealed a material fact from Melanson requires a comparison of United's representations to Melanson with the terms of the weight program in the CBA. Thus, as the misrepresentation claim, this claim requires reference to and interpretation of the CBA. Melanson's concealment claim is preempted.

■ Melanson's final fraud theory under California law is promise without intent to perform. To establish this claim, Melanson must prove that United made a promise about a material matter, with no intention of honoring that promise, that induced her to take action she otherwise would not have taken. See Cal.Civ.Code §§ 1709, 1710. See also Cicone v. URS Corp., 183 Cal.App.3d 194, 203, 227 Cal.Rptr. 887, 892 (1986); Miller v. National American Life

Ins. Co. of California, 54 Cal.App.3d 331, 338, 126 Cal.Rptr. 731, 734 (1976). "A promise to do something necessarily implies the intention to perform, and where such intention is absent, there is an implied misrepresentation of fact, which is actionable fraud." 5 B. Witken, Summary of California Law § 685 (9th ed. 1988).

This claim presents a somewhat closer question, but we conclude that Melanson cannot prove the elements of this claim without reference to the CBA or to conduct governed by the CBA and its grievance machinery. It is true that the representations United made to Melanson and her reliance on those representations can be established without reference to the CBA. But as a practical matter, proof of United's intent not to perform and its nonperformance lead inevitably to the CBA. The weight standards that United enforced are incorporated into the CBA. That enforcement constituted the repudiation of United's alleged promise to Melanson, and it is that repudiation that permits the trier of fact to infer that United never intended to perform its promise to Melanson. "The subsequent repudiation relates back to the original promise." Cicone v. URS Corp., 183 Cal.App.3d 194, 203, 227 Cal.Rptr. 887, 892 (1986). If the CBA in fact guaranteed Melanson an exemption from the weight requirements, her claim would clearly be affected, if not defeated. Her claim can scarcely be litigated without reference to the CBA.

All three of Melanson's state law claims would intrude, then, upon the collective bargaining system established by Congress under the RLA. Even under the narrower preemption test of section 301, we held similar claims preempted in Bale v. General Telephone Co. of California, 795 F.2d 775 (9th Cir.1986). There, two workers claimed fraud and misrepresentation by the employer in representing that they, as temporary employees, would obtain permanent status after six months, when the CBA provided otherwise. We said:

> In order to prove their fraud and negligent misrepresentation claims, [plaintiffs] would be required to show that the

terms of the collective bargaining agreement differed significantly from the individual employment contracts they believed they had made. Resolution of their state tort claims is therefore "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract."

*Id.* at 780 (quoting *Allis–Chalmers v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1915, 85 L.Ed.2d 206 (1985)). The same considerations compel preemption here, even more strongly. The entire "minor dispute" resolution system of the RLA was intended to provide prompt resolution, without resort to the courts, of disputes arising out of the employment relation. *Edelman,* 892 F.2d at 843, 45 U.S.C. § 151a. Melanson's claims are encompassed by that purpose.

## CONCLUSION

The district court properly held that Melanson's state law claims are preempted by the RLA. We therefore affirm the judgment.

AFFIRMED.