**Juan RODRIGUEZ, Plaintiff,**

v.

**UNITED AIRLINES, INC. a corporation; Does One through Twenty, inclusive, Defendants.**

**No. C–91–1714 MHP.**

United States District Court, N.D. California.

July 14, 1992.

---

**1024**

William N. Woodson, III, Thomas E. Kotoske, Palo Alto, CA, for plaintiff.

F. Curt Kirschner, Jr., Tom A. Jerman, Ken A. Remson, O'Melveny & Myers, San Francisco, CA, for defendant United Airlines, Inc.

## MEMORANDUM AND ORDER

PATEL, District Judge.

This matter comes before the court on defendant United Airline's motion for summary judgment on two issues: (1) whether the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq., preempts plaintiff's claim alleging race discrimination in violation of California public policy; and (2) assuming that plaintiff's claim is not preempted, whether defendant United Airlines ("defendant") engaged in racially discriminatory conduct. For the reasons below, the court: (1) DENIES defendant's motion with respect to the RLA preemption issue; and (2) continues defendant's motion as to defendant's discriminatory conduct pending the parties' submission of additional evidence.

## BACKGROUND

Defendant hired plaintiff, who is of Puerto Rican descent, in January 1987 as a mechanic. Ex. A to Remson Dec. ¶ 1. By virtue of plaintiff's membership in the International Association of Machinists ("IAM"), plaintiff's employment was governed by the 1986–89 Agreement between United Airlines and the International Machinists and Aerospace Workers ("IAMAW"), (hereinafter "collective bargaining agreement" or "CBA.") *Id.* at ¶ 2.

In late 1988, plaintiff transferred to the Brake Shop, one of the departments in the United Airlines Maintenance Operations Center. Id. at ¶¶ 4, 5. In August and September of 1990, plaintiff's foreman, Leonard Williams, conducted three audits of plaintiff's production output, based on concerns brought by plaintiff's supervisors that plaintiff was not recording accurately the number of units processed. Williams Dec. at ¶¶ 7–12. The count cards of other employees were audited as well. Williams Dep. 86:7–8, 87:6–11. The audits indicated that plaintiff was recording more processed units than he was fully completing. Williams Dec. ¶¶ 7–12.

Plaintiff claims that the discrepancies are not the product of deliberate falsification, but rather are due to the Brake Shop policy of allowing workers to claim credit for units that are at least 70% completed. Rodriguez Dec. ¶ 5; *see* Johnson Dec. ¶¶ 2–3; Terry Dec. ¶ 3. Defendant's management employees deny that such a policy exists. *E.g.,* Miller Dep. at 101:12–18; Ex. H to Def.Mem. at 4. Plaintiff also claims that other employees claim credit for units not completely finished but have not been disciplined. Rodriguez Dep. at 211–213; *see* First Amended Complaint ¶ 14.

Based on the audit results, and pursuant to the requirements of the collective bargaining agreement, Williams issued a report recommending termination. Ex. F to Def.Mem. The basis of the recommendation was plaintiff's alleged violation of the United Air Lines Rules of Conduct for IAMAW Represented Employees that prohibit falsification of company records. *Id.*; *see* Ex. G to Def.Mem.; Williams Dec. ¶¶ 4, 14.

An Investigative Review Hearing, required by CBA Art. XVIII, § D, *see* Williams Dec. ¶ 16, supported the recommendation of termination. Ex. H to Def.Mem. The grievance procedure continued until March 25, 1991, when plaintiff withdrew his grievance prior to arbitration. Ex. I to Def.Mem; Williams Dec. ¶ 17; Ex. A to Remson Dec. ¶ 18. On April 17, 1991, plaintiff filed a charge of discrimination with the California Department of Fair Employment and Housing ("DFEH") under the Fair Employment and Housing Act ("FEHA"), Cal.Gov't Code §§ 12900–12996. Plaintiff later withdrew this charge in order to file suit in court. Rodriguez Dep. 171:11–22; Ex. L to Def.Mem. Plaintiff then requested and received a right-to-sue letter from DFEH.

On June 5, 1991, plaintiff filed an action for damages arising out of defendant's alleged racial discrimination against plaintiff and defendant's alleged breach of contract and breach of implied covenant. Plaintiff asked for: (1) lost wages and related employment benefits; (2) general, incidental, and consequential damages, and damages for emotional distress; (3) attorneys' fees; and (4) punitive damages. Complaint at 9. On October 8, 1991, plaintiff amended his complaint to allege only race discrimination in violation of California public policy; plaintiff's prayer for relief remained unchanged. First Amended Complaint at 7–8. Plaintiff asserts that the only reason for his termination is racial discrimination. First Amended Complaint ¶ 15. At oral argument, plaintiff further alleged that he was fired in retaliation for plaintiff's earlier complaints regarding defendant's racially discriminatory practices. *See also* Plaintiff's Mem. at 6:19–7:12. At oral argument, plaintiff also maintained that the complaint was intended to assert a common law claim in addition to FEHA. The par-

ties stipulated that plaintiff would proceed only on the FEHA claim.

## DISCUSSION

### I. *The Legal Standard*

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (the nonmoving party may not rely on the pleadings but must present specific facts creating a genuine issue of material fact); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

The court's function, however, is not to make credibility determinations. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv.*, 809 F.2d at 630–31.

### II. *RLA Preemption of Plaintiff's Claim*

The purpose of the RLA is to keep airline labor disputes out of the courts by providing a framework for resolving such disputes. *Melanson v. United Air Lines, Inc.*, 931 F.2d 558, 561–62 (9th Cir. 1991). This framework is composed of mandatory administrative grievance procedures, which are the exclusive remedy [1] in

---

1. An exception to the exclusive nature of the RLA grievance procedures exists where the employer's conduct is outrageous, is only peripherally related to federal law and affects " 'interests which [are] deeply rooted in local feelings and responsibility.' " *Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367, 1369 (9th Cir.1978) (quoting *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 243–44, 79 S.Ct. 773, 779,

3 L.Ed.2d 775 (1959)). For example, the court in *McCann* upheld under this exception plaintiff's state tort claims against her employer for false imprisonment, intentional infliction of emotional distress, assault, slander and conspiracy. 758 F.Supp. at 567. In contrast, where plaintiff's state tort claim was incidental to a wrongful discharge, the Ninth Circuit has re-

claims arising from "minor disputes" under collective bargaining agreements. *Id.* at 562. The term "minor dispute" is a term of art bearing no relation to the gravity of a dispute, but which merely identifies the dispute as one that can be resolved solely on the basis of the collective bargaining agreement. *McCann v. Alaska Airlines, Inc.*, 758 F.Supp. 559, 563 (N.D.Cal.1991).

### A. *Analogy to LMRA Cases*

Plaintiff relies on, inter alia, *Allis Chalmers Corporation v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) and *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), for the proposition that Congress did not intend the RLA to preempt state law discrimination claims. Defendant counters that these cases are inapposite because they involve preemption under the Labor Management Relations Act ("LMRA"), which, as the Ninth Circuit held in *Grote v. Trans World Airlines*, 905 F.2d 1307, 1310 (9th Cir.1990), is narrower than RLA preemption. *See Melanson*, 931 F.2d at 562. However, the plaintiff in *Grote* alleged wrongful termination and other contract claims, not discrimination on the basis of race or some other protected class. 905 F.2d at 1308. Similarly, *Melanson* involved contract claims requiring analysis of CBA terms, not discrimination claims. 931 F.2d at 560, 563. *Melanson* and *Grote* provide little guidance for determining whether the RLA preempts state *discrimination* claims.

Although the Ninth Circuit has not faced this specific issue, defendant points to other case law that purportedly support RLA preemption of race discrimination claims. For example, the Sixth Circuit in *McCall v. Chesapeake & Ohio Railway Co.*, 844 F.2d 294, 303 (6th Cir.1988), held that the RLA preempts state discrimination claims arising under the Michigan Handicappers' Civil Rights Act. *McCall*, however, explicitly differentiates between such discrimination claims and racial discrimination claims. *Id.*

at 302. In claims arising under the Handicappers' Act, "the methodology employed in determining statutory violations is necessarily different from the methodology employed in ascertaining whether an employer has discriminated on the basis of race." *Id.* Moreover, the analysis of a claim arising under the Handicappers' Act requires determining whether the employee's physical condition is related to job performance—a factual inquiry identical to that of an RLA arbitration board. *Id.* at 302–03. Thus, *McCall* does not dispose of the issue in favor of the defendant.

█ Notwithstanding defendant's exhortations to the contrary, this court may look to LMRA cases for guidance in resolving the RLA preemption question. *See, e.g., McCall*, 844 F.2d at 299 (the court looks to "preemption decisions premised on other labor law statutes" in determining RLA preemption of state discrimination claims). Scrutiny of Ninth Circuit LMRA preemption cases reveals that the LMRA cannot preempt state discrimination claims where state law defines and enforces a worker's right without reference to the terms of a collective bargaining agreement. *See, e.g., Ackerman v. Western Elect. Co., Inc.*, 860 F.2d 1514, 1517–19 (9th Cir.1988) (plaintiff's FEHA claim not barred by the LMRA because FEHA establishes rights without reference to a collective bargaining agreement); *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1286–87 (9th Cir.1989) (the LMRA does not preempt plaintiff's FEHA claim); *Miller v. AT & T Network Systems*, 850 F.2d 543, 550 (9th Cir.1988) (the LMRA does not preempt Oregon's antidiscrimination statute because state law establishes an mandatory and independent state right).

█ FEHA, the statute governing plaintiff's claim, is a source of California workers' nonnegotiable right to be free from discrimination in the workplace. *See Chmiel*, 873 F.2d at 1286. It creates a mandatory and independent state right without reference to the terms of a collec-

---

fused to apply the exception. *Magnuson*, 576 F.2d at 1369.

The court finds that the plaintiff's allegations of racially discriminatory conduct, even if true, do not fall within the exception.

tive bargaining agreement. *See id.* at 1286–87. A finding that the RLA preempts state discrimination claims would work to the detriment of a state's ability to proscribe discriminatory conduct by employers. For these reasons the court finds that the RLA does not preempt plaintiff's discrimination claim arising under FEHA.

### B. *The Ninth Circuit Test for RLA Preemption*

Even if preemption under the RLA is not properly compared to preemption under the LMRA, defendant's argument still would fail because plaintiff's discrimination claim does not meet the Ninth Circuit test for RLA preemption.

 In this circuit, a dispute is considered a "minor dispute" if it meets one of the following criteria: (1) the dispute relates to rates of pay, rules, and working conditions; (2) the dispute is "arguably" governed by the CBA or has a "not obviously insubstantial relation to a labor contract"; (3) the dispute is inextricably intertwined with the grievance machinery of the CBA; or (4) the dispute involves the interpretation of a current collective bargaining agreement. *Melanson,* 931 F.2d at 562. Here, however, plaintiff's claim is not "inextricably intertwined" with or otherwise closely related to the grievance machinery of the CBA. The sole issue for consideration is whether defendant unlawfully treated its Hispanic employees differently from its non-Hispanic employees. Although resolution of this issue will require some tangential analysis of workplace rules, it will not require extensive analysis of the CBA's terms. This claim is therefore not a "minor dispute" within the meaning of the RLA, and this matter is properly before this court. Accordingly, the court DENIES defendant's motion on the issue of RLA preemption of plaintiff's claim.

### III. *Defendant's Discriminatory Conduct*

California courts have held that FEHA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., share iden-

tical objectives. *Mixon v. Fair Employment & Housing Comm'n,* 192 Cal.App.3d 1306, 1316, 237 Cal.Rptr. 884 (1987). For this reason, California courts look to federal law for guidance in interpreting state antidiscrimination statutes analogous to Title VII. *Id.*

 Under federal discrimination law, in order to survive defendant's summary judgment motion, plaintiff here must produce "specific facts either directly evidencing a discriminatory motive or showing that the employer's explanation is not credible." *Lindahl v. Air France,* 930 F.2d 1434, 1438 (9th Cir.1991) (citing *Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir. 1983), for the proposition that a plaintiff facing summary judgment in a discrimination case must come forward with *substantial factual evidence* ). A mere restatement of plaintiff's prima facie case is insufficient to survive summary judgment. *Id.* at 1437–38.

 Defendant asserts that plaintiff has not raised a genuine issue of material fact on the issue of whether defendant's employees were improperly motivated by unlawful discriminatory intent when they terminated plaintiff's employment. At oral argument, plaintiff conceded that his claim is based on retaliatory termination. However, the complaint and accompanying depositions and declarations make numerous references to harassment and disparate treatment. For this reason the court will analyze the strengths of plaintiff's arguments on three separate discrimination issues: (1) harassment; (2) retaliation; and (3) disparate treatment regarding unit count practices. The court finds that although plaintiff here has not merely restated his prima facie case, neither has he satisfactorily come forward with substantial factual evidence.

### A. *Harassment*

Plaintiff alleges that racial hostilities permeated the atmosphere of the Brake Shop, Rodriguez Dep. 102:9–16, and he points to two main sources of these hostilities. First, plaintiff asserts that the lead

mechanic consistently assigned the "dirtiest" jobs to members of minority groups. Rodriguez Dec. ¶ 10. Evidently this problem became so pronounced that, on separate occasions, plaintiff and three other minority workers complained to Williams. *Id.* ¶ 11; Johnson Dec. ¶ 8; Williams Dep. 32:24–33:5, 35:24–36:22, 39:1–40:14, 41:7–42:6.

Plaintiff and these other employees also complained separately to Miller, Williams' supervisor. Miller Dep. 48:5–21. According to Miller's notes of the meeting with plaintiff, plaintiff's complaints were too vague to warrant an investigation, and Miller asked plaintiff to come back later with more specific complaints. Pl.'s Ex. 1 to Miller Dep. Miller testified that plaintiff never returned. Miller Dep. 110:25–111:4, 112:7–14. The record does not indicate whether plaintiff in fact did come back to Miller with more specific complaints.

Plaintiff's discussion with Miller also focused on the second source of the Brake Shop's alleged racist atmosphere: racist jokes and comments made by the lead mechanic. Rodriguez Dec. ¶¶ 11, 12. For example, plaintiff alleges that Beaman, the lead mechanic, called plaintiff his "Puerto Rican houseboy," and told plaintiff that if plaintiff were to lose his job he could "go back to Texas and sell tacos." *Id.* ¶ 6. In addition, plaintiff alleges that Beaman posted in the work area an offensive poster depicting Mexicans as shark bait. *Id.* ¶ 9. It is unclear, however, whether plaintiff's statements to Miller during their discussion went into such detail, since Miller found most of plaintiff's allegations too vague to justify an investigation. Pl.'s Ex. 1 to Miller Dep. Moreover, Miller's investigation of the poster incident did not reveal the culprit, and Beaman's role in the incident remains speculative. Miller Dep. 74:11–76:8.

Plaintiff also targets Williams in his complaints of racial harassment. Plaintiff claims that Williams selectively reprimanded plaintiff for talking too much. Rodriguez Dep. 109:1–19. Plaintiff also claims that when he complained about Beaman's alleged racist conduct to Williams, Williams simply brushed off plaintiff's concerns. *Id.* 104:20–25.

Except for Williams' lack of concern about plaintiff's allegations of racial hostilities in the Brake Shop, plaintiff's evidence regarding management's condoning of racist conduct may not meet the "substantial factual evidence" test enunciated in *Steckl.* There is no evidence showing that plaintiff returned to Miller with more specific allegations as Miller requested. In addition, it is unclear whether plaintiff described the nature of his complaints made to Miller in sufficient detail to indicate the need for further investigation. Such evidence is critical for plaintiff's successful opposition to defendant's summary judgment motion.

## B. *Retaliation*

Plaintiff asserted at oral argument that defendant's employees conducted the count card audit prior to plaintiff's termination in retaliation for his complaint to Miller about the Brake Shop's racially hostile environment. The greatest weakness of this argument, however, lies in the discrepancy regarding the date that plaintiff first made his complaint. Plaintiff alleges that he complained to Miller about racial harassment in the Brake Shop sometime in the summer of 1990. Rodriguez Dep. 72:16–23; *see* Rodriguez Dec. ¶ 12. Yet, Miller claims that Rodriguez first came to him on September 4, 1990. Pl.'s Ex. 1 to Miller Dep.; *see* Miller Dep. at 79:21–26. Plaintiff's output was first audited on August 30, 1990, Williams Dec. ¶ 9. This time frame, if accurate, precludes a finding of retaliation based on plaintiff's complaints.

Moreover, in his lengthy deposition, plaintiff himself never characterized the count card audit as motivated by management's retaliation for plaintiff's complaints about racial harassment in the Brake Shop. *See* Rodriguez Dep. 78:9–12, 85:14–21, 86:15–87:3; Miller Dep. 100:25–101:3. In fact, plaintiff has not attributed his termination to retaliation, but rather to the racially discriminatory atmosphere. Rodriguez Dep. 110:13–25, 112:22–113:4. Plaintiff has not yet come forward with substantial evidence demonstrating a cause-and-

effect relationship between his complaint to Miller and his termination.

### C. *Disparate Treatment Relating to Unit Count Practices*

Plaintiff's strongest case for discriminatory treatment lies in his allegations that other employees regularly include as complete those units on which they have done only a certain amount of work. However, he offers little evidence to support these allegations. For example, plaintiff claims that several workers have followed this counting practice, Rodriguez Dep. 208:22–209:16, 212:9–213:6; yet, nowhere in the record, is there evidence that the Brake Shop supervisors knew that these individuals were including uncompleted units in their count cards. Plaintiff also claims that management investigated one employee for falsification of company records but only gave that employee a reprimand, but plaintiff does not have firsthand knowledge of this incident. Rodriguez Dep. 211:16–212:8.

Plaintiff's strongest allegation is that in addition to plaintiff's faulty count cards, management discovered a discrepancy in another employee's count card during the audits, but that the employee, Laidler, was able to "explain" the discrepancy and was not terminated. Miller Dep. 88:3–7, 90:6–20; Williams Dep. 87:23–88:22, 104:21–106:7. If Laidler were non-Hispanic, this incident would create a strong case of disparate treatment. Nowhere in the record, however, is there any reference to Laidler's race or national origin.

Given the weaknesses cited above, and the difficulty inherent in proving an employer's discriminatory intent, the court is reluctant to rule on defendant's summary judgment motion without giving plaintiff the opportunity to strengthen his case. Accordingly, the court continues defendant's motion as to defendant's discriminatory conduct pending plaintiff's submission of additional evidence and defendant's response to plaintiff's submission.

CONCLUSION

Accordingly, the court DENIES defendant's summary judgment motion as to RLA preemption and continues defendant's motion pending the parties' submission of additional evidence regarding defendant's discriminatory conduct.

IT IS SO ORDERED.