**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| OPTIONAL CAPITAL, INC., a Korean corporation f/k/a Optional Ventures Korea, Inc., <br><br> Plaintiff - Appellant, <br><br> v. <br><br> KYUNG JOON KIM, an individual, aka Chris Kim, aka Christopher Kim, aka K. J. Kim; et al., <br><br> Defendants - Appellees. | No. 08-56285 <br><br> D.C. No. 2:04-cv-03866-ABC-PLA <br><br> MEMORANDUM<sup>*</sup> |

Appeal from the United States District Court
for the Central District of California
Audrey B. Collins, Chief District Judge, Presiding

Argued and Submitted November 3, 2010
Pasadena, California

Before: PREGERSON, RIPPLE,** and GRABER, Circuit Judges.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

** The Honorable Kenneth F. Ripple, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

Optional Capital, Inc. ("Optional") appeals three decisions[1] of the district court in an action that arises out of the allegedly fraudulent activity of Mr. Kyung Joon "Christopher" Kim ("Mr. Kim") with the help of Ms. Bora Lee, Ms. Erica Kim, First Stephora Avenue, Inc. ("First Stephora") and Alexandria Investments, LLC ("Alexandria") (collectively, "Kim Claimants"). The primary issue on appeal is the correctness of the district court's grant of the Kim Claimants' motion for judgment as a matter of law or, in the alternative, for new trial thereby setting aside a jury verdict in favor of Optional. The two other decisions by the district court on appeal are its denial of Optional's Motion for Rule 59(e) or Rule 60 Relief and its exclusion of evidence offered by Optional. For the reasons that follow, we affirm in part and reverse in part the judgment of the district court and remand for proceedings consistent with this order.

**I**

---

[1] Optional attached four decisions of the district court to its notice of appeal. However, in its brief, Optional does not contest the district court's denial of its motion in limine decided on July 5, 2006. Optional has waived this issue, so we do not address it. See Seven Words LLC v. Network Solutions, 260 F.3d 1089, 1097 (9th Cir. 2001) (noting "our longstanding rule that we do not consider arguments not raised in the briefs").

We review de novo a district court's decision to grant judgment as a matter of law. Tortu v. Las Vegas Metro. Police Dep't, 556 F.3d 1075, 1081 (9th Cir. 2009).

**A.**

There was insufficient evidence to support the jury verdict on the fraudulent concealment claim because Optional failed to establish harm. Cal. Civ. Code §§ 1709, 1710(3); Melanson v. United Air Lines, Inc., 931 F.2d 558, 563 (9th Cir. 1991) (applying California law). Optional asserts that it unknowingly sold stock to the Kim Claimants and that the Kim Claimants profited from later selling that stock. But those assertions are unsupported by the evidence. Optional concedes that Mr. Kim paid approximately $30 million, roughly 38 billion Won, for the stock sold by Optional. The testimony of Optional employee Hong Chan Lim verifies that Optional received around $30 million from Mr. Kim for the stock. Optional claims that the Kim Claimants profited from selling Optional stock, allegedly receiving $33 million upon selling the stock. As support for the $33 million, Optional points to Exhibit 508, which includes wire transfers made from various shell companies controlled by the Kim Claimants to Next Step and Zoic. Optional has not provided, however, a foundation for why the wired amounts to

3

Next Step and Zoic reflect exclusively sales from Optional stock.  Mr. Kim stated that the wired amounts included disposition of Optional stock <u>and</u> other assets, such as shares in EZ.com.  Exhibit 508 therefore does not support the contention that the Kim Claimants profited from selling Optional stock.  Because Optional failed to show it suffered harm, the evidence is insufficient to support the jury's verdict and damages award for fraud by concealment.

**B.**

As in the case of its fraudulent concealment claim, Optional cannot show that it suffered harm from the defendants' fraudulent misrepresentations.  Cal. Civ. Code §§ 1709, 1710(2).  Accordingly, we affirm the district court's decision to grant judgment as a matter of law in favor of the Kim Claimants on the fraud claims.

**C.**

Optional has, however, presented sufficient evidence to support the jury's verdict on the conversion claim.  As a preliminary matter, Optional's claim of conversion is not waived.  Rule 50(b) renews a prior Rule 50(a) motion, and a movant cannot assert a ground not raised in the Rule 50(a) motion.  Fed. R. Civ. P. 50(b); <u>see also</u> <u>Exxon Shipping Co. v. Baker</u>, 128 S. Ct. 2605, 2617 n.5 (2008).

4

The nonmoving party, however, does not face similar restrictions and is not limited only to the defenses raised in the Rule 50(a) motion.  The decision on appeal is the district court's grant of the post-trial Rule 50(b) motion, and Optional, in its opposition to the Rule 50(b) motion, clearly did contend that evidence existed to support conversion.[2]

To establish conversion, Optional must show that:  (1) Optional had ownership or a right to possess the property at the time of conversion; (2) the Kim Claimants wrongfully took possession or prevented Optional from having possession of the property; and (3) resulting damages.  Mindys Cosmetics, Inc. v. Dakar, 611 F.3d 590, 601 (9th Cir. 2010) (applying California law).

With respect to the first requirement, Lim testified that Optional had 19.2 billion Won in April 2001 before the takeover by Mr. Kim.  Then, the five capital increases from May to December 2001 raised approximately another 38 billion Won for Optional.  Given that the revenue was raised from a stock sale, a jury could reasonably find that Optional owned the money in its account.

---

[2]  We also note that the district court denied the Kim Claimants' Rule 50(a) motion for all of Optional's claims, finding no waiver of the conversion claim.

5

Optional also has evidentiary support for the second requirement: that the Kim Claimants wrongfully took possession of the property. Exhibit 506 provides records of twenty-one transaction slips made in 2001, recording withdrawals and receipts. Three of the slips reflect payments made to Mr. Kim, and ten slips show payments to Ms. Bora Lee. In testifying about one specific transaction slip, Nam Jin Lee, a former low-level employee at Optional, said that, on one occasion, Mr. Kim directed her to deposit 500 million Won into the account of LRIC, which Mr. Kim controlled. After Nam Jin Lee made the deposit, she filled out a transaction slip, noting the payment as a "one time temporary advance payment" for Mr. Kim. Lim also stated that, although the five capital increases raised a total revenue of around 38 billion Won, none of that money was found in Optional's account during an audit in 2002. Hwang Ook Yang, an employee of Optional and the current co-CEO, stated that he investigated Optional's accounts for evidence of any new investment by Optional in 2001, which would account for the missing 38 billion Won. When asked whether he found any investment activity, Yang replied, "To my knowledge there was hardly any new investment." The circumstantial evidence is sufficient to support a jury's finding that the Kim Claimants wrongfully took possession of Optional's property.

6

The Kim Claimants attempt to rebut any wrongdoing by claiming that Optional consented to removal of the funds. It notes that the transaction slips had boxes for the accountant, funding person, person in charge, department head and president to initial and approve the transfer. None of the twenty-one transaction slips in Exhibit 506 is initialed by the department head or the president. Many others also are missing another signature, usually that of the fund person or person in charge. Furthermore, even if the president or department head had approved the transactions, the Kim Claimants offer no evidence of board approval. The lack of board approval is sufficient to show that Optional did not consent to the withdrawals.

The evidence supporting the final requirement of damages is clear. Optional's license to trade on the market was revoked due to its lack of capital. The withdrawals not only deprived Optional of its funds, but also directly caused Optional to lose its trading license. Optional was harmed, and the Kim Claimants' wrongful action was a substantial cause of that harm.

The jury's award of damages for conversion is also supported by the evidence. The jury awarded Optional 37.1 billion Won for its conversion claim. At trial, Lim testified that "38 billion Won, approximately, to [his] recollection"

7

was missing from Optional. Moreover, the total of all twenty-one transaction slips in Exhibit 306 yields a figure of 37.4 billion Won, close to the amount awarded by the jury and stated by Lim. Although eight of the twenty-one transaction slips do not show Mr. Kim or Ms. Bora Lee as recipients, Optional's allegation is that the Kim Claimants transferred money from Optional into the accounts of companies that the Kim Claimants controlled. Thus, a jury reasonably could find, based on the circumstantial evidence, that even the transaction slips that did not note Mr. Kim or Ms. Bora Lee as recipients reflected part of the amount converted. The jury's damages award of 37.1 billion Won is supported by Lim's testimony and the transaction slips in Exhibit 506.

There is circumstantial evidence sufficient to support the jury's verdict and damages award for conversion. We reverse the district court's judgment as a matter of law and direct the district court to reinstate the jury verdict for conversion.

## II

Because we set aside the judgment as a matter of law on the conversion claim, we must consider two additional matters regarding the conversion claim only: whether substantial evidence supported the jury verdict finding Alexandria

8

and First Stephora liable as defendants and whether the district court erred in granting, in the alternative, a new trial on the conversion claim.

## A.

Alexandria and First Stephora correctly were included as defendants in the conversion claim. Optional has shown that the Kim Claimants controlled Alexandria and First Stephora. Given the Kim Claimants' exclusive control of the two companies and their past practice of using shell companies, a jury could find that Alexandria and First Stephora were involved in a conversion scheme to deprive Optional of its property.

## B.

We reverse the district court's grant, in the alternative, of a new trial on the conversion claim. The standard of review for a district court's granting of a new trial is abuse of discretion. Even if substantial evidence exists to deny a Rule 50 motion, that "does not, however, prevent the court from granting a motion for a new trial . . . if the verdict is against the clear weight of the evidence." Landes Constr. Co. v. Royal Bank of Can., 833 F.2d 1365, 1371 (9th Cir. 1987) (emphasis added). When the district court has applied the correct legal rule, the district court's resolution of a motion to grant a new trial is an abuse of discretion if it is

"(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc) (internal quotation marks omitted).

The Kim Claimants introduced no evidence that supports a contrary explanation of Optional's loss of its money. Under these circumstances, we cannot say that the jury verdict is contrary to the weight of the evidence. There is simply no evidence of record to weigh against the evidence submitted by Optional, and so the district court's grant of a new trial is "without support in inferences" from the record. Hinkson, 585 F.3d at 1262; see also Tortu, 556 F.3d at 1084; 12 James Wm. Moore et al., Moore's Federal Practice § 59.13[2][f][iii] (3d ed. 2000) ("A new trial is warranted only if the verdict is so clearly against the weight of the evidence as to amount to a manifest miscarriage of justice.").

### III

We affirm the two additional decisions of the district court raised by Optional on appeal: the denial of Optional's motion for reconsideration and the exclusion of three pieces of evidence offered by Optional.

First, the district court did not abuse its discretion in denying Optional's motion for reconsideration. See M2 Software, Inc. v. Madacy Entm't, 421 F.3d

1073, 1086 (9th Cir. 2005). Mr. Kim's conviction is not new evidence because Optional learned of the conviction nearly a month prior to the district court's decision to grant judgment as a matter of law in favor of the Kim Claimants. See Feature Realty, Inc. v. City of Spokane, 331 F.3d 1082, 1093 (9th Cir. 2003). The Korean proceedings also do not preclude the litigation here because the issues litigated in Korea were not identical. See Resolution Trust Corp. v. Keating, 186 F.3d 1110, 1116 (9th Cir. 1999).

Nor did the district court abuse its discretion in excluding three pieces of evidence offered by Optional. See United States v. Bonds, 608 F.3d 495, 512 (9th Cir. 2010). The court acted well within its discretion in excluding the expert report and testimony of Yong In Lee. Expert testimony can be excluded when a party has untimely designated an expert. See Quevedo v. Trans-Pac. Shipping, Inc., 143 F.3d 1255, 1258 (9th Cir. 1998). Optional does not provide evidence that the report was designated in a timely manner, and the record suggests otherwise. After the discovery cut-off date for experts, Optional designated Yong In Lee as an expert, but the district court did not reopen or extend discovery.

The district court also acted within its discretion when it excluded information from the Korean Financial Supervisory Service's Data Analysis,

11

Retrieval and Transfer system ("DART") because of a lack of authenticity on the ground of hearsay. Optional claims that information from DART is admissible under Federal Rule of Evidence 901(b)(7). In support of that argument, however, Optional only analogizes DART to the Securities and Exchange Commission's Electronic Data Gathering, Analysis and Retrieval system without providing further support for how the information from DART meets the requirements of Rule 901(b)(7).

Optional also fails to establish that the district court improperly excluded Exhibit 507. It offers no citation or reference in its brief to any decision in which the district court excluded Exhibit 507. Moreover, in Optional's notice of appeal, none of the attached orders contain a decision excluding Exhibit 507. Optional has failed to carry its burden on appeal. See 9th Cir. R. 30-1.4(a)(iv), (v) ("[T]he excerpts of record shall include any opinion, findings of fact or conclusions of law relating to the judgment or order appealed from" and "any other orders or rulings, including minute orders, sought to be reviewed.").

AFFIRMED in part, REVERSED and REMANDED in part. The parties shall bear their own costs of this appeal.

12