George KICKING WOMAN, et al.,
Plaintiffs–Appellants,

v.

Donald P. HODEL, Secretary of the Interior, and Leo Lee Old Person, Defendants–Appellees.

No. 87–4381.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 9, 1989.

Decided July 5, 1989.

James W. Zion, Helena, Mont., for plaintiffs-appellants.

Roger J. Marzulla, Asst. Atty. Gen., U.S. Dept. of Justice, Washington, D.C., for appellee Donald P. Hodel.

Jayne Mitchell, Cut Bank, Mont., for appellee Leo Lee Old Person.

Before REINHARDT, KOZINSKI and TROTT, Circuit Judges.

REINHARDT, Circuit Judge:

Relatives of a deceased Native American disputed the intestate succession to interest in "allotted trust lands" held by a member of the Blackfeet Indian Tribe of Montana, the late Joseph Kicking Woman ("Joseph"

or "decedent").[1] An administrative law judge determined that one claimant, Leo Lee Old Person ("Leo"), was Joseph's natural son and sole heir. George Kicking Woman ("George"), Joseph's brother, and other relatives, appealed the decision of the administrative law judge to the Department of the Interior's Board of Indian Appeals ("the Board"). The Board found no reason to overturn the decision below, and George with other members of the Kicking Woman family filed a challenge to the Board's action in the District Court of Montana, naming the Secretary of the Interior and Leo as defendants. The district court granted summary judgment in favor of defendants on some claims and dismissed others for lack of jurisdiction due to the statutory bar to judicial review of 25 U.S.C. § 372.[2] George and the other relatives now appeal.

We hold that federal courts have jurisdiction to review allegations that Indian probate proceedings violate the constitution. At the same time, we affirm the decision of the district court, inasmuch as George and his relatives have raised no colorable constitutional claims in this case, either with respect to the regulations promulgated under the statute or to the hearing they received as part of the probate proceedings.

## I.

Joseph Kicking Woman died intestate in the beneficial possession of allotted trust land. Pursuant to regulations of the Department of the Interior promulgated under 25 U.S.C. § 372 and 43 U.S.C. § 1464,[3] an administrative law judge conducted two days of intestate probate hearings at the Blackfeet reservation. Several months after the hearings ended, the administrative law judge issued his decision, ruling that Leo Lee Old Person was the natural son of the decedent, and Joseph Kicking Woman's sole heir, to the exclusion of the decedent's brother, George Kicking Woman, and other collateral relatives. The administrative law judge accepted the testimony provided by Leo's mother, Edith Old Person Young Running Crane, and six other witnesses, that Joseph was Leo's father. The same judge found George Kicking Woman's testimony "not credible."

This determination disposed of the controversy between Leo and George because 25 U.S.C. § 371 mandates that natural offspring of any customary marriage or cohabitation between Indian allottees are deemed legitimate offspring, and that for purposes of intestate succession to allotted Indian trust land, lineal descendants are the preferred heirs.[4] Thus, since Leo Lee

---

**1.** "Allotted trust lands" are Tribal lands distributed to individual Indians under the General Allotment Act of 1887. 25 U.S.C. § 331 *et seq.* Indians do not take unrestricted title to allotted lands, which remain under the control of the Department of the Interior, subject to the beneficial possession of the original Indian allottee or his heirs.

"Allotment is a term of art in Indian law.... It means a selection of specific land awarded to an individual allottee from a common holding," *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 142, 92 S.Ct. 1456, 1466, 31 L.Ed. 2d 741 (1972) (citations omitted), in which the allottee is the beneficial owner and the government is the trustee. *Tooahnippah (Goombi) v. Hickel,* 397 U.S. 598, 609, 90 S.Ct. 1316, 1323, 25 L.Ed.2d 600 (1970).

**2.** Section 372 states in relevant part:

"When any Indian to whom an allotment of land has been made, or may hereafter be made, dies before the expiration of the trust period and before the issuance of a fee simple patent, without having made a will disposing of said allotment as hereinafter provided, the Secretary

of the Interior, upon notice and hearing, and under such rules as he may prescribe, shall ascertain the legal heirs of such decedent, *and his decision thereon shall be final and conclusive.*" (emphasis supplied)

**3.** 43 C.F.R. Subtitle A, Subpart D, (§§ 4.200 et seq.)

**4.** Section 371 states, in relevant part:

"For the purpose of determining the descent of land to the heirs of any deceased Indian under the provisions of section 348 of this title, whenever any male and female Indian shall have cohabited together as husband and wife according to the custom and manner of Indian life, the issue of such cohabitation shall be, for the purpose aforesaid, taken and deemed to be the legitimate issue of the Indians so living together, and every Indian child, otherwise illegitimate, shall for such purpose be taken and deemed to be the legitimate issue of the father of such child...."

Old Person was Joseph's natural son, he was his heir under the terms of the statute.

George and the other relatives then filed an administrative appeal which was denied in a published opinion. They questioned the administrative law judge's assessments of witness credibility, his conclusion that Leo was Joseph's son, and whether sufficient deference was given to Blackfeet language and custom in making the heirship determination. *Estate of Joseph Kicking Woman*, 15 IBIA 83 (January 14, 1987). The Board found no reason to overturn the administrative law judge's determinations of witness credibility, upon which he had based his conclusions of paternity and heirship, and noted that federal rather than tribal law controlled the disposition of allotted trust land.

George and the other relatives next argued that the Board should grant a new hearing at which they could introduce new evidence. The Board denied this request because the appellants offered no reasonable excuse for not offering the "new" evidence in the initial hearings and because some of the evidence appeared irrelevant.

In reaching its decision, the Board applied two settled common law rules of Indian Trust and Probate law. First, where evidence is conflicting, the Board of Indian Appeals normally will not disturb a decision based upon findings of credibility

when the Administrative Law Judge had an opportunity to hear the witnesses and observe their demeanor. *Estate of John Walter Few Tails*, 13 IBIA 127 (1985). Second, rehearings in Indian probate proceedings are intended to allow consideration of alleged errors of fact or law made by the Administrative Law Judge and to permit the introduction of evidence that could not, with diligent effort, have been discovered prior to the original hearing. *Estate of Benjamin Kent, Sr. (Ben Nawanoway)*, 13 IBIA 21 (1984) (citing 43 C.F.R. § 4.241(a)).[5]

■ George and the other relatives then brought suit against the Department of the Interior and Leo in district court complaining that the nature of Indian probate procedures and the agency proceedings in this case denied them "both procedural and substantive due process," as well as equal protection under the law.[6]

## II.

The single substantive question before us is whether an exception to 25 U.S.C. § 372's bar to judicial review of Board decisions exists in cases in which a prospective plaintiff raises a due process challenge to the conduct of the Interior Department's probate proceedings.[7] Interestingly, both

---

**5.** All hearings and appeals in this case were conducted in accordance with the procedures established in "Rules Applicable to Indian Affairs Hearings and Appeals." 43 C.F.R. Subtitle A, Subpart D, esp. §§ 4.202–4.242 and §§ 4.310–4.340 (10–1–87 edition). Under these regulations, the administrative law judge decides all issues of fact and law involved in the proceedings. 43 C.F.R. § 4.240(a). The Board's scope of review is not limited, and it possesses the full "inherent" power of the Secretary of the Interior "to correct a manifest injustice or error where appropriate." 43 C.F.R. § 4.320

**6.** The equal protection claim may be dealt with summarily. George and the other members of the Kicking Woman family assert that because Indian probate in allotted trust land differs from all other probate, and requires Indian allottees to seek relief in a forum separate from other heirs, who may contest intestate succession awards either in State or Tribal Courts, heirs to allotted trust lands are denied equal protection. This line of reasoning fails, for the Supreme Court has effectively disposed of all

arguments that statutes which treat Indians differently from others offend the constitution by the fact of differential treatment alone:

> The decisions of this Court leave no doubt that federal legislation with respect to Indian tribes, although relating to Indians as such, is not based upon impermissible racial classifications. Quite the contrary, classifications expressly singling out Indian tribes as subjects of legislation are expressly provided for in the Constitution and supported by the ensuing history of the Federal Government's relations with the Indians.

*United States v. Antelope*, 430 U.S. 641, 645, 97 S.Ct. 1395, 1398, 51 L.Ed.2d 701 (1977) (citations omitted).

**7.** It is of course unquestioned that plaintiffs with standing may challenge the facial constitutionality of a statute in federal court. *See Davis v. Passman*, 442 U.S. 228, 242, 99 S.Ct. 2264, 2275, 60 L.Ed.2d 846 (1979) (citing *Marbury v. Madison*, 5 U.S. 137, 163, 1 Cranch 137, 163, 2 L.Ed. 60 (1803)). The Supreme Court has also

the Secretary of the Interior and Leo Lee Old Person acknowledge that there may be such an exception, although one "narrow" in its possible applications. We agree.

■ As a general matter, it is clear that the federal courts do not have jurisdiction to review the merits of proceedings in which the Secretary of the Interior has finally settled competing claims to allotted Indian trust lands. *See First Moon v. White Tail,* 270 U.S. 243, 46 S.Ct. 246, 70 L.Ed. 565 (1926). Nothing in the General Allotment statute can be construed to indicate that the United States has consented to be sued in connection with the administration of allotments. *United States v. Preston,* 352 F.2d 352, 355–356 (9th Cir. 1965). We have held more recently that the words "final and conclusive," found in 25 U.S.C. § 372 *supra,* in regard to the Secretary's determination of Indian heirship, must be interpreted literally. *Ruff v. Hodel,* 770 F.2d 839, 841 (9th Cir.1985) (interpreting 25 U.S.C. § 565) (citing *Arenas v. U.S.,* 197 F.2d 418, 420 (9th Cir.1952) (interpreting 25 U.S.C. § 372)).

■ Turning to the narrow question we decide here, we note first that the scant precedent on judicial review of the probate process for allotted trust lands does not provide a definitive answer. At the same time, the cases seem to support the idea that, when a plaintiff alleges that a violation of procedural due process under the Fifth Amendment has occurred during the course of an administrative proceeding, there does exist an exception to the non-reviewability of heirship determinations under 25 U.S.C. § 372. *Cf. Eskra v. Morton,* 524 F.2d 9, 12 n. 6 (7th Cir.1975); *Simmons v. Eagle Seelatsee,* 244 F.Supp. 808 (E.D.Wash.1965) (three-judge court), *aff'd*

384 U.S. 209, 86 S.Ct. 1459, 16 L.Ed.2d 480 (1966).[8]

The court in *Eskra* found an exception to the bar against judicial review, despite the language of 25 U.S.C. § 372, and allowed a plaintiff to raise an equal protection claim in federal court after the Board had (pursuant to Wisconsin law) excluded an illegitimate child from inheriting an interest in trust land. In *Simmons,* a three judge district court panel found that, where a substantial question as to the constitutionality of a *statutory provision* was present, Section 372 could not, "consistent with due process, prohibit court examination of the constitutional[ity]" of the Department's action. *Simmons,* 244 F.Supp. at 811–813. It should be noted that both *Eskra* and *Simmons* are of limited precedential value, for in each case the court relied in part on Section 10 of the Administrative Procedure Act, 5 U.S.C. §§ 702, to support its assertion of jurisdiction. The Supreme Court has since held that the "APA does not afford an implied grant of subject-matter jurisdiction permitting federal review of agency action." *Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977).

Even acknowledging the limitations of these earlier cases, we believe that recognizing a due process exception to the statutory bar of 25 U.S.C. § 372, adheres "to the well-established principle that[,] when constitutional questions are in issue, the availability of judicial review is presumed." *Califano,* 430 U.S. at 109, 97 S.Ct. at 986 (citations omitted). In *Califano,* the Supreme Court refused to create an exception to a provision of the Social Security Act which mandated that certain decisions of the Secretary (at that time, of Health, Education and Welfare) were final and unre-

held that the language "final and conclusive" in statutes, mandating finality and barring judicial review of administrative decisions does not mean that courts do not have jurisdiction to hear facial challenges to the constitutionality of the legislation itself. *Johnson v. Robison,* 415 U.S. 361, 367, 94 S.Ct. 1160, 1165–66, 39 L.Ed. 2d 389 (1974). The narrow question before us here is whether, in the face of a general bar to judicial review, the federal courts have jurisdiction to hear a constitutional challenge to actions (i.e. procedures, proceedings, or decisions) au-

thorized by a specific statute, in the absence of a facial attack on the statute itself.

**8.** We note that in *Crawford v. Andrus,* 472 F.Supp. 853, 855 (D.Mont.1979), a district court ruled that it did not have jurisdiction to hear a due process challenge to proceedings conducted under § 372. To the extent that that court's holding is inconsistent with ours here, we overrule it.

viewable. Federal jurisdiction was denied to a prospective plaintiff who sought to raise a *non-constitutional* challenge to administrative actions. In reaching its result, the *Califano* court was careful to distinguish cases like the one before it from those in which individuals raised constitutional claims, relying primarily on *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), in drawing this distinction.

In *Weinberger,* the Court had refused to create an implied exception for constitutional claims to the jurisdictional bar of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), because *another* section of the same statute authorized judicial review of the constitutional claims the plaintiffs had raised. 422 U.S. at 756, 95 S.Ct. at 2462. The *Weinberger* court strongly implied that a different result would be required in cases in which the bar to federal court review "reached constitutional challenges to statutory limitations, [for] then absolutely no judicial consideration of the issue would be available." *Weinberger,* 422 U.S. at 763, 95 S.Ct. at 2465 (citing *Johnson,* 415 U.S. at 367–68, 94 S.Ct. at 1166).

Turning to the allotment statute, particularly § 372, we note first that, unlike *Weinberger,* there is no provision elsewhere in the statutory scheme under which constitutional claims can be brought to federal court. Furthermore, our examination of the face of the statute and of its legislative history has turned up no indication whatever that Congress intended to foreclose judicial review of constitutional claims arising from the Interior Department proceedings.[9] *See* H.Rep. No. 1135, 61st Cong., 2d Sess. at 2 (1910). Consequently, given the general canon that

> [c]onstitutional questions are obviously unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions,

*Califano,* 430 U.S. at 109, 97 S.Ct. at 986, we decline to expand the scope of 25 U.S.C. § 372 to constitutionally-founded claims and, accordingly, hold that the section does not preclude the invocation of subject matter jurisdiction under 28 U.S.C. § 1331 for those plaintiffs who seek to challenge the constitutionality of Indian probate proceedings conducted by the Department of the Interior.

### III.

Having established that jurisdiction exists to hear their claims, we turn now to the substance of the allegations raised by George Kicking Woman and the other dissatisfied relatives. The arguments they advance are confused, in some cases practically impossible to understand. While we have attempted to characterize them as coherently as possible, each claim is meritless.[10]

---

**9.** The Supreme Court has implied that Congress might under some circumstances be able to enact a statute which foreclosed judicial review even of constitutional claims, if an intent to do so was manifested by "clear and convincing evidence," *Weinberger,* 422 U.S. at 763, 95 S.Ct. at 2465, although the Court noted that there would be "a serious constitutional question of the validity of [such a] statute." *Id.* Given the lack of *any* support for the proposition that Congress intended § 372 to bar judicial review of constitutional claims, we obviously do not need to reach "the serious constitutional question" left open by the Supreme Court in *Weinberger.*

**10.** Given our holding that we can adjudicate only claims raising constitutional issues, we do not rule on the merits of the non-constitutional claims disposed of by the district court. We note, however, that, as with the equal protection claim discussed *supra* at 1205 n. 6, these claims are wholly lacking in merit. Specifically, the contention that the Interior proceedings violated an 1855 treaty with the Blackfeet tribe lacks foundation in that document, which says nothing about succession to alloted trust lands. *See* Articles 3, 4, Treaty with the Blackfoot [sic] Indians, October 17, 1855, 11 Stat. 657 (1855). Likewise, the claim that the proceedings violated international law flies in the face of overwhelming precedent to the effect that the type of sovereignty afforded to Indians does not diminish Congress' ability to legislate with respect to them, even to the extent of abrogating treaty rights. *See, e.g., United States v. Dion,* 476 U.S. 734, 106 S.Ct. 2216, 2220–21, 90 L.Ed.2d 767 (1986); *United States v. Wheeler,* 435 U.S. 313, 322–26, 98 S.Ct. 1079, 1086–88, 55 L.Ed.2d 303 (1978).

The core allegation of the complaint stems from George's contention that the Board denied him his right to due process by issuing a decision that "was vague, lacked definition" and was unsupported by rules or "articulated standards." Continuing in this vein, George argues that the Board exceeded the scope of its statutory authority in applying federal rather than state or tribal law; that "the decision was not supported by the facts or the record;" and that it "violated [the] applicable law of evidence and relied upon hearsay to the extent that it was fundamentally unfair." From this broad array of charges, George concludes that "the alleged errors of due process separately and cumulatively denied the plaintiffs' liberty and property interests without due process of law."

Our examination of the regulations under which the probate hearings were conducted (*supra* at 1204 n. 3, and 1205 n. 5) and of the record in the specific proceedings conducted leaves no doubt that the administrative law judge, the Board, and the Department of the Interior complied in all instances with the requirements of due process. In reaching this conclusion, we are guided by the principle that the requirements of due process are flexible and "call[ ] for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976). The Interior Department regulations provide for, and George and the other relatives received, adequate notice of the proceedings, a full opportunity to present their case and to challenge that of Leo Lee Old Person, a written decision, and a meaningful appeal. In the context of the proceedings at issue, due process requires nothing further; it certainly does not require, nor would § 372 allow, us to perform the sort of substantive review of the evidence before, and the decisions of, the Interior Department (although we suspect that George's "constitutional claims" were largely an artifice to allow him to relitigate the merits of his claim). While we hold that George did indeed have a right to raise his nominally constitutional claims in federal court, the district court was correct both in its diagnosis of the claims as thinly disguised attempts to circumvent the adverse findings and result of the Interior proceedings and in its decision to enter judgment in favor if the Interior Department and Leo Lee Old Person.

AFFIRMED.