22 F.3d 59
 146 L.R.R.M. (BNA) 2147, 62 USLW 2674,
127 Lab.Cas. P 11,077
 Seyed N. SHAFII, Plaintiff-Appellant-Cross-Appellee,
v.
PLC BRITISH AIRWAYS, Defendant-Appellee-Cross-Appellant,
International Association of Machinists and Aerospace
Workers, AFL-CIO, District Lodge 100, Defendant.
 Nos. 600, 1200, Dockets 93-7141, 93-7189.
 United States Court of Appeals,
Second Circuit.
 Submitted Jan. 25, 1994.
Decided April 20, 1994.
 
 Seyed N. Shafii, pro se.
 Harry N. Turk, New York City, Kenneth W. DiGia, Epstein Becker & Green, P.C., for defendant-appellee PLC British Airways.
 Before: WALKER and JACOBS, Circuit Judges, and DALY, District Judge.*
 WALKER, Circuit Judge:
 
 
 1
 Plaintiff Seyed N. Shafii brought suit against his former employer PLC British Airways ("British Air") and his former union, the International Association of Machinists & Aerospace Workers, AFL-CIO, District Lodge 100 ("Union"), which per stipulation is no longer party to this action, to vacate an arbitration award in British Air's favor rendered pursuant to the Railway Labor Act, 45 U.S.C. Sec. 151 et seq. ("RLA"). Plaintiff now appeals, pro se, from a judgment of the United States District Court for Eastern District of New York (John R. Bartels, Judge ), granting summary judgment for British Air because the only evidence offered by plaintiff in support of his claim that the award should be vacated for a denial of due process constituted inadmissible hearsay. British Air cross-appeals from the same judgment as well as an earlier ruling of the United States District Court for the Northern District of New York (Neal P. McCurn, Judge ), both of which held that the district court had jurisdiction over plaintiff's action. British Air contends that jurisdiction to review an arbitration award is limited by 45 U.S.C. Sec. 153 First (q) to the grounds specified therein, and that denial of due process, the claim at issue, is not one of these grounds.
 
 
 2
 For the reasons stated below, we vacate the judgment below and remand this matter to the district court for further proceedings consistent with this opinion.
 
 BACKGROUND
 
 3
 Plaintiff was a Reservation Sales Agent for British Air. On January 30, 1989, British Air discharged him for insubordination, and plaintiff promptly filed a grievance through the Union. Pursuant to the collective bargaining agreement, the plaintiff and British Air agreed to bypass the System Board of Adjustment and proceed directly to arbitration.
 
 
 4
 The arbitration was held on January 25, 1990; plaintiff was represented by his own attorney, Ira Kazlow, as well as the General Chairman of the Union. Plaintiff, through his attorney, presented numerous witnesses, conducted cross-examination of British Air's witnesses, and filed a post-hearing brief. The hearing was transcribed upon agreement of the parties by a certified shorthand reporter. The mutually selected arbitrator rendered his decision on May 7, 1990, upholding plaintiff's discharge.
 
 
 5
 On August 7, 1990, the plaintiff filed a Verified Petition in the United States District Court for the Northern District of New York to set aside the arbitration award, pursuant to 45 U.S.C. Sec. 153 First (q). Plaintiff claimed that he was denied due process in the arbitration proceeding. Specifically, he alleged that the arbitrator, during off-the-record conversations, denied his attorney's request to present one witness and several documents during the proceeding. The proffered witness was Jodi DeVido-Esaili, a Union shop steward who allegedly was present during plaintiff's disciplinary hearing held on January 24, 1989 and a subsequent investigative hearing on January 30, 1989. The two documents allegedly offered were the minutes of those two proceedings as recorded by DeVido-Esaili.
 
 
 6
 Plaintiff submitted proof of the arbitrator's exclusion of this evidence in the affidavit of Michael McAllister, a Union shop steward who attended the arbitration hearing. McAllister's affidavit recounted that the arbitrator had stated more than once that he had to catch a flight at about 6:00 p.m., and that he had to conclude the hearing at 5:00 p.m. Further, the McAllister affidavit stated:
 
 
 7
 Toward the end of the hearing, I heard Ira Kazlow, the attorney who represented Mr. Shafii, tell [the arbitrator] that he wanted to call Jodi DeVido-Esaili ... as a witness. Mr. Kazlow also stated that he wanted to offer two documents as evidence....
 
 
 8
 McAllister's affidavit stated that the arbitrator declined to hear DeVido-Esaili's testimony or even consider the two documents, purportedly stating that he "had heard enough and that it was too late to get bogged down in technicalities." McAllister posits in his affidavit that the stenographer likely did not record this exchange because the parties were "off the record."
 
 
 9
 British Air first moved before Judge McCurn to dismiss the plaintiff's Verified Petition for lack of subject matter jurisdiction. British Air argued that an alleged denial of due process is not a permissible basis for vacating an arbitration award under the RLA. Judge McCurn denied the motion and held that judicial review is available "when there has been a denial of due process by some act of the board." Judge McCurn thereafter granted British Air's request to transfer the matter to the Eastern District of New York.
 
 
 10
 Before Judge Bartels in the Eastern District of New York, British Air reiterated its argument that alleged due process violations are not judicially cognizable, and it further moved for summary judgment on the grounds that the sole evidence adduced by plaintiff in support of his Verified Petition, the McAllister affidavit, constituted inadmissible hearsay. Judge Bartels expressly refused to disturb Judge McCurn's earlier ruling that a denial of due process in an RLA arbitration was reviewable, but he granted the motion for summary judgment on the basis that the McAllister affidavit was inadmissible hearsay.
 
 
 11
 Plaintiff appeals from Judge Bartels's decision to grant summary judgment to British Air. British Air cross-appeals from the holding that the district court had jurisdiction to review the arbitration award on due process grounds.
 
 DISCUSSION
 I. Reviewability of Denials of Due Process
 
 12
 We note at the outset that the parties agreed to proceed directly to voluntary binding arbitration and bypass the System Board of Adjustment set up pursuant to 45 U.S.C. Sec. 153 Second, the voluntary counterpart to the mandatory National Railroad Adjustment Board ("NRAB" or "Board"), created under the RLA Sec. 153 First. See Baylis v. Marriott Corp., 843 F.2d 658, 662 (2d Cir.1988). However, this fact does not affect our analysis. Because the arbitrator occupies the position of the statutorily-created NRAB, he or she is subject to the same statutory and constitutional constraints as the NRAB. See, e.g., Chernak v. Southwest Airlines Co., 778 F.2d 578, 580 (10th Cir.1985) (stating that Sec. 153 First (q)'s "narrow scope of review applies equally to judicial review of awards made by" an arbitrator selected "by an agreement of the parties"); Brotherhood of Ry., Airline & S.S. Clerks v. Jacksonville Terminal Co., 591 F.2d 1387, 1390 (5th Cir.1979) (per curiam) ("[I]t is settled that voluntary arbitration awards can be reviewed and the scope of review by the Court is the same as that applied to statutory arbitration awards.").
 
 
 13
 We begin our inquiry by examining the language of the statute. The NRAB is composed of four divisions, each with particular jurisdiction over distinct matters. See 45 U.S.C. Sec. 153 First (h). Section 153 First (q) provides for judicial review of decisions rendered by divisions of the NRAB. This provision lists three grounds upon which courts have jurisdiction to disturb an order of an NRAB division:
 
 
 14
 (1) "for failure of the division to comply with the requirements of [the RLA]";(2) "for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction"; or
 
 
 15
 (3) "for fraud or corruption by a member of the division making the order."
 
 
 16
 Despite this narrow language, courts historically reviewed NRAB proceedings to ensure that a participant's rights to due process were not violated. See D'Elia v. New York, N.H. & H. R.R., 338 F.2d 701, 702 (2d Cir.1964) (per curiam), cert. denied, 380 U.S. 978, 85 S.Ct. 1340, 14 L.Ed.2d 272 (1965); see also Kotakis v. Elgin, J. & E. Ry., 520 F.2d 570, 574 (7th Cir.), cert. denied, 423 U.S. 1016, 96 S.Ct. 451, 46 L.Ed.2d 388 (1975); Rosen v. Eastern Air Lines, 400 F.2d 462, 464 (5th Cir.1968), cert. denied, 394 U.S. 959, 89 S.Ct. 1307, 22 L.Ed.2d 560 (1969). In D'Elia, after reviewing the plaintiff's claim of a denial of due process during his NRAB hearing, we affirmed the district court's ruling that plaintiff was not denied due process: "D'Elia's conclusory allegations as to a denial of due process are wholly insufficient to resist the defendants' motion for summary judgment." 338 F.2d at 702.
 
 
 17
 Subsequent confusion on this issue was engendered by the Supreme Court's decision in Union Pacific Railroad v. Sheehan, 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978). In Sheehan, an employee claimed that he was denied due process because the NRAB rejected his argument that the limitations period for his claim should have been tolled during the period his claim was pending in state court prior to an intervening change in the law that mandated that such claims be brought exclusively before the NRAB. See Andrews v. Louisville & Nashville R.R., 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), overruling Moore v. Illinois Cent. R.R., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941). Dismissing Sheehan's petition, the district court ruled that it could not disturb the NRAB's decision without violating the RLA because the respondent had failed to offer any grounds under Sec. 153 First (q) that would give the court power to review his claims. The Tenth Circuit reversed. 576 F.2d 854 (10th Cir.1978). It held that the NRAB's failure to consider the merits of Sheehan's claims constituted a denial of due process. Furthermore, the circuit court, notwithstanding the provisions of Sec. 153 First (q), suggested that courts might have the ability to reexamine "purely legal issues" on review. 576 F.2d at 856.
 
 
 18
 In a brief per curiam opinion, the Supreme Court reversed. The Court's opinion is somewhat ambiguous, chiefly because it was organized around the equally ambiguous opinion of the Tenth Circuit. The Court opined that if the Tenth Circuit based its ruling on the denial of due process by the NRAB for failing to consider Sheehan's claim, then it was "simply mistaken," because the NRAB's opinion did in fact consider Sheehan's tolling argument on the merits, and rejected it. See Sheehan, 439 U.S. at 92, 99 S.Ct. at 401. If, on the other hand, the Tenth Circuit intended merely to reverse the NRAB's legal ruling on Sheehan's tolling argument, then the court exceeded its jurisdiction under the RLA. Id. at 92-93, 99 S.Ct. at 401-02. The Supreme Court emphasized that a court cannot overturn an NRAB ruling just because it disagrees with the result or legal reasoning. In the context of this latter discussion--whether a court can overrule a "purely legal" determination of the NRAB--the Court discussed the exceedingly narrow review provisions of the RLA: "We have time and again emphasized that this statutory language means just what it says." Id. at 93, 99 S.Ct. at 402.
 
 
 19
 There currently exists a division among the circuits over whether Sheehan precludes due process review. Several courts have read Sheehan to hold that alleged violations of due process by the NRAB are not judicially cognizable. Principal among them is the Third Circuit's ruling in United Steelworkers of America Local 1913 v. Union Railroad, 648 F.2d 905, 911 (3d Cir.1981), though at least two other circuits have also reached this conclusion. See Jones v. Seaboard Sys. R.R., 783 F.2d 639, 642 n. 2 (6th Cir.1986); Henry v. Delta Air Lines, 759 F.2d 870, 873 (11th Cir.1985). Upon examination of these decisions, it appears that these courts simply assumed that Sheehan prohibited due process review without independent analysis of the language and structure of the Supreme Court's opinion.
 
 
 20
 On the other hand, some courts more recently have determined that Sheehan is not a bar to due process reviewability. In Edelman v. Western Airlines, 892 F.2d 839 (9th Cir.1989), the Ninth Circuit carefully analyzed the Sheehan decision and pointed out its ambiguities. Putting Sheehan to one side, the court noted that even in areas where Congress had barred judicial review altogether, such as with decisions by the Board of Indian Appeals, courts could still exercise review "in cases in which a prospective plaintiff raises a due process challenge to the conduct of the ... proceedings." Id. at 846 (quoting Kicking Woman v. Hodel, 878 F.2d 1203, 1205 (9th Cir.1989)). The Seventh Circuit has also explicitly held that Sheehan did not prohibit due process review. See Steffens v. Brotherhood of Ry., Airline & S.S. Clerks, 797 F.2d 442 (7th Cir.1986). As the court there stated, "[t]he [Supreme] Court found that the NRAB had considered [Sheehan's due process] claim and rejected it. It noted that for the court to reject the NRAB's decision in this matter because it disagreed would be to exceed the scope of its review powers. But the Court did not explicitly disapprove of due process as a basis for review." Id. at 448-49 n. 5.
 
 
 21
 Since Sheehan was decided, numerous courts in other circuits have likewise reviewed NRAB orders on due process grounds. See Hayes v. Western Weighing & Inspection Bureau, 838 F.2d 1434, 1436 (5th Cir.1988); Armstrong Lodge No. 762 v. Union Pac. R.R., 783 F.2d 131, 135 (8th Cir.1986); Radin v. United States, 699 F.2d 681, 684 (4th Cir.1983) ("procedural deprivation by the arbitrators is ground for relief in the district court"); Springfield Terminal Ry. v. United Transp. Union, 767 F.Supp. 333, 336-37 (D.Me.1991) (pointing out that although NRAB judicial review is among the "narrowest known in the law, ... the narrowness of the review does not deprive the Court of the power to review awards for violations of due process"); Arroyo v. Crown Air/Dorado Wings, 672 F.Supp. 50, 52 (D.P.R.1987).
 
 
 22
 Moreover, at least one panel in our Circuit since Sheehan has reviewed an NRAB ruling for an alleged denial of due process. In Brotherhood of Maintenance of Way Employees v. St. Johnsbury & Lamoille County Railroad/M.P.S. Associates, Inc., 794 F.2d 816, 819 (2d Cir.), vacated in part on other grounds, 806 F.2d 14 (2d Cir.1986), we held that the NRAB's ruling, "based on evidence submitted in a prior proceeding in which none of the newly notified parties had been represented, was such an egregious failure to comply with the basic requirements of due process as to warrant judicial rejection of the result." The decision neither cited Sheehan nor considered the three statutory grounds for review.
 
 
 23
 Finally, several district courts in our Circuit have also at least assumed that due process challenges are cognizable. See International Ass'n of Machinists v. Metro-North Commuter R.R. & Transp. Workers Union, Local 2001, 829 F.Supp. 95, 97 (S.D.N.Y.1993) (Griesa, C.J.), appeal pending, --- F.2d ---- No. 93-9011 (2d Cir. argued Mar. 16, 1994); DeClara v. Metropolitan Transp. Auth., 748 F.Supp. 92, 96 & n. 9 (S.D.N.Y.1990) (Sweet, J.), aff'd, 930 F.2d 911 (2d Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 193, 116 L.Ed.2d 154 (1991); American Fed'n of R.R. Police, Inc. v. National R.R. Passenger Corp., No. 86-4173, 112 Lab.Cas. (CCH) p 11,388, at 26,004, 1989 WL 32842 (E.D.N.Y.1989) (Raggi, J.); Brotherhood of Maintenance of Way Employees v. St. Johnsbury & L. C. R.R., 512 F.Supp. 1079, 1084 (D.Vt.1981) (Coffrin, J.), aff'd in part and vacated in part, St. Johnsbury, supra; Czeremcha v. Eastern Airlines, 91 Lab. Cas. (CCH) p 12,828, at 17,842, 1980 WL 2186 (S.D.N.Y.1980) (Sand, J.); but see Valentino v. American Airlines, 99 Lab.Cas. (CCH) p 10,673, at 20,265, 1983 WL 2091 (E.D.N.Y.1983) (Sifton, J.) (holding that Sheehan bars due process review).
 
 
 24
 British Air urges that this review is improper and that Sheehan mandates dismissal of this case for lack of subject matter jurisdiction. We disagree. Primarily, British Air's argument ignores the fact that in Sheehan the Supreme Court itself considered the due process claim on the merits when it held that the Tenth Circuit was "simply mistaken" if it ruled that there was a due process violation. Nowhere in the opinion does the Court state that it interprets the statute to bar due process challenges. The more likely scenario is that the Court initially disposed of the due process violation as nonexistent and then rebuffed the Tenth Circuit for its expansive ruling on their ability to review "purely legal questions." As District Judge Coffrin astutely pointed out some thirteen years ago:
 
 
 25
 The better reading of the Sheehan opinion ... is that it is largely directed at refuting the Tenth Circuit's suggestion that a wide range of purely legal questions might be open for review by the district court. Sheehan alone is not enough to put an end to the entirely reasonable practice of the district courts of examining NRAB decisions for violations of due process prior to the enforcement of an award.
 
 
 26
 St. Johnsbury, 512 F.Supp. at 1084.
 
 
 27
 Furthermore, we find persuasive the Ninth Circuit's analysis in Kicking Woman v. Hodel, 878 F.2d 1203 (9th Cir.1989), discussed in that court's opinion in Edelman cited above. In Kicking Woman, the court was confronted with a decision of the Board of Indian Appeals. The applicable statute precluded judicial review of the Board's ruling and provided that the "decision shall be final and conclusive." See 25 U.S.C. Sec. 372. Nonetheless, the court reasoned that due process challenges to the proceedings themselves are cognizable. 878 F.2d at 1206-07. The court relied in part on the principle that Congressional efforts to foreclose constitutional review would raise "a serious constitutional question of the validity of [such a] statute," and any such intent would have to be manifested by "clear and convincing evidence." Id. at 1207 n. 9 (citing Weinberger v. Salfi, 422 U.S. 749, 763, 95 S.Ct. 2457, 2465-66, 45 L.Ed.2d 522 (1975)). "Given the lack of any support for the proposition that Congress intended Sec. 372 to bar judicial review of constitutional claims," the court did not reach the "serious constitutional question" that would be raised and held that the plaintiff could challenge the Board's ruling on due process grounds. Id. Likewise, Sec. 153 First (q) of the RLA does not manifest by clear and convincing evidence that Congress intended to foreclose judicial review of constitutional claims. See Edelman, 892 F.2d at 847.
 
 
 28
 That an employee's due process rights should be protected in proceedings before the NRAB and associated entities statutorily created by the RLA flows from the nature of the scheme erected by Congress. As Judge Posner has written:
 
 
 29
 The National Railroad Adjustment Board, however, while private in fact, is public in name and function; it is the tribunal that Congress has established to resolve certain disputes in the railroad industry. Its decisions therefore are acts of government, and must not deprive anyone of life, liberty, or property without due process of law.
 
 
 30
 Elmore v. Chicago & I.M. Ry., 782 F.2d 94, 96 (7th Cir.1986). Relinquishing courts' ability to review the NRAB's procedures for due process violations would leave unprotected a plaintiff's legitimate constitutional right to be treated in accord with due process before the Board. We are unwilling to presume that Congress intended such a result in Sec. 153 First (q).
 
 
 31
 In conclusion, like the Ninth and Seventh Circuits and the many district courts that have rejected the argument, we do not read Sheehan to preclude review of allegations of denial of due process by the NRAB. We reaffirm the rule in this Circuit that an order of the NRAB or its counterparts is reviewable upon a claim that a participant was denied due process by the Board.
 
 II. Inadmissible Hearsay
 
 32
 We turn now to Judge Bartels's ruling that the evidence proffered by plaintiff in opposition to British Air's motion for summary judgment constituted inadmissible hearsay, and was thus insufficient to defeat the motion. See H. Sand & Co. v. Airtemp Corp., 934 F.2d 450, 454-55 (2d Cir.1991). We think the district court erred in so ruling.
 
 
 33
 Rule 801(c) of the Federal Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." We believe that although McAllister's affidavit recounts what he "heard" the arbitrator and plaintiff's lawyer say, these statements in the affidavit would not constitute inadmissible hearsay. The statements are not offered for the truth of the matter asserted but for the fact that they had occurred. See United States v. Cantu, 876 F.2d 1134, 1137 (5th Cir.1989) ("The statements were not offered as an assertion of a fact but, rather, as the fact of an assertion."); 6 Wigmore on Evidence, Sec. 1766, at 250 (James H. Chadbourne ed., rev. ed. 1976); McCormick on Evidence, Sec. 249, at 101 (John W. Strong ed., 4th ed. 1992). For example, the statement of the arbitrator allegedly telling the participants that he "had heard enough and that it was too late to get bogged down in technicalities" is not offered for the truth that he had in fact heard enough or that it was in fact too late to get bogged down in technicalities, but rather for the fact that these were the reasons given for refusing plaintiff's request. McAllister's affidavit does nothing more than state that he witnessed the arbitrator refuse to allow the witness to testify or to consider the two documents offered. As such, McAllister is the classic fact witness, indicating what he will testify to at trial based directly upon his own observations.
 
 
 34
 In conclusion, we believe that the statements contained in the McAllister affidavit are not inadmissible hearsay. The question remains, however, whether plaintiff's allegations, taken as true, would constitute a denial of due process that would warrant vacating the arbitration ruling. We believe that the district court should consider this issue in the first instance, and we therefore express no view on the merits of this question.
 
 CONCLUSION
 
 35
 Accordingly, the judgment of the district court is vacated, and the matter is remanded for proceedings consistent with this opinion.
 
 
 36
 Costs to plaintiff-appellant.
 
 
 
 *
 The Honorable T.F. Gilroy Daly, United States District Judge for the District of Connecticut, sitting by designation